## In re ROTHSCHILD.

(Supreme Court, Appellate Division, First Department.  November 11, 1910.)

1. ATTORNEY AND CLIENT (§ 38*) — LIABILITIES OF ATTORNEY — PROFESSIONAL MISCONDUCT.

Where an attorney gave a power of attorney to sign his name to any and all letters of collection, and other business relating to or in connection with the business of a corporation, as long as his attorneys in fact should remain in the employ of the corporation, receiving therefor a valuable consideration, he is not released from responsibility therefor by an oral agreement with an officer of the corporation that only letters which he had approved should be so signed.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 38.*]

2. ATTORNEY AND CLIENT (§ 14*)—NATURE OF OFFICE OF ATTORNEY.

On admission to practice, an attorney becomes a public officer.

[Ed Note.—For other cases, see Attorney and Client, Cent. Dig. § 21; Dec. Dig. § 14.*]

3. ATTORNEY AND CLIENT (§ 38*) — LIABILITIES OF ATTORNEY — PROFESSIONAL MISCONDUCT.

The execution and delivery by an attorney at law of a power of attorney to sign his name to any and all letters of collection, and other business of a corporation, as long as the attorneys in fact should remain in the employ of the corporation, is unprofessional conduct requiring discipline, especially in view of Code Civ. Proc. § 59, now Judiciary Law (Consol. Laws, c. 30) § 466, requiring the attorney to take the constitutional oath of office; Code Civ. Proc. § 72, now Judiciary Law, § 479, subjecting the attorney to a penalty for permitting a person not his general law partner, or a clerk in his office, to sue out a mandate, or prosecute or defend an action in his name, Code Civ. Proc. § 63, now Penal Law (Consol. Laws, c. 40) § 271, making it a misdemeanor for a person not admitted to practice as an attorney, and Penal Code, §§ 149, 150, now Penal Law, § 277, making it a misdemeanor for an attorney to permit any person not his general law partner, or a clerk in his office, to sue out process, or to prosecute or defend any action in his name, except as authorized by the section.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 38.*]

4. ATTORNEY AND CLIENT (§ 58*)—SUSPENSION OF ATTORNEY—GROUNDS.

Where an attorney at law executes a power of attorney to sign his name to any and all letters of collection and other business of a corporation, such an offense never having been passed upon by the court, the attorney will be suspended from practice for one year, with leave to apply for reinstatement after the expiration of the year on satisfactory proof that he has abstained from attempting to practice, and has otherwise properly conducted himself.

[Ed. Note.—For other cases, see Attorney and Client, Dec. Dig. § 58.*]

In the matter of charges of malpractice and gross professional misconduct by Arthur Rothschild, attorney at law.  Application for final order on report of referee.  Attorney suspended from practice.

See, also, 133 App. Div. 892, 118 N. Y. Supp. 1137.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, MILLER, and DOWLING, JJ.

Forsyth Wickes, for petitioner.
Charles W. Coleman, for respondent.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

INGRAHAM, P. J. The Association of the Bar of the City of New York presents to this court charges against the respondent an attorney and counselor at law of malpractice and gross professional misconduct. The respondent interposed an answer, and the charges were referred to a referee, who has made his report, and the matter is now before this court on that report. The respondent was admitted to practice in May, 1887, and since that time has practiced in the city of New York. There were two charges—one that the respondent authorized the Empire Manufacturing Company to send out over his name what was called a garnishee notice which was annexed to the petition; and, the second, that the respondent gave to this corporation a general power of attorney wherein the employés of the said company were authorized to sign the name of the respondent to letters of collection, and other business relating to or in connection with the business of the said furniture company, as long as the persons mentioned remained in the employ of the said company, for which the respondent received from the furniture company furniture of the value or $150. The notice which was sent out by this furniture company to which was attached the printed name of the respondent was headed, "Empire Furn. Mfg. Co. v. H. P. Downes," was directed to the "Brunswick Balke Col. Co., Employer, and H. P. Downes, Wage Earner," and contained a notification that the claimant had a claim against the said wage-earner for the sum of $5.75 and costs, "now due and owing Arthur Rothschild, attorney, 519 West 21st Street, New York, N. Y., is authorized to accept and receipt for the same," and provided:

"In accordance with an act of your state relating to the garnishment of wages adopted May, 1908, in force November, 1908, demand is hereby made on you for the payment of the aforesaid claim out of the wages or commissions due or to become due of such wage earner not exempt from garnishment, and you are required to hold the excess of the same wage earner's wages or commissions, above his legal exemptions, subject to garnishment, for the period provided in said act. And you, the said employer, are to notify the said wage earner by delivering to him a copy of this notice, left with you for that purpose."

This notice was dated the 18th of February, 1909. At the foot of this instrument was the following: "This notice holds pay for five days and is followed by garnishment proceedings"—and also the following:

"Notice to Employee—To ignore the above will be the cause of annoyance to your employer. It is followed by a garnishment and a subpœna duces tecum, compelling your employer to bring all books into court to show your account. You can save this annoyance and yourself further costs by prompt settlement."

And printed in red ink across the face is the following statement:

"A copy of this garnishee will be served on your employer within three days unless paid."

This notice was served upon Downes as an employé, and at the same time was served on the Brunswick company, the employer of the said Downes. Downes consulted his attorney for advice who called up the office of the respondent, and finally entered into a conversa-

tion with a man in the office who said that he was the respondent. This individual stated that he was the attorney for the Empire Furniture Manufacturing Company, whereupon the attorney stated that he had received this alleged garnishment demand which apparently referred to an action pending between the Empire Furniture Company and Downes, and asked if such an action had been started. The respondent stated that the details of the affairs of the company were handled by a clerk who was at the office of the furniture company for that purpose. The attorney for Downes then asked under what provision of law such a demand had been made, and the reply was, "You ought to know it is under the garnishee law." The attorney subsequently received a letter bearing the office address of the respondent which purported on its face to have been dictated by the respondent in relation to the claim.

The referee found that the respondent had no knowledge of this particular circular, or of its service upon the alleged debtor or his employer, and the person that signed the name of the respondent to this letter was not authorized to sign his name to letters or communications. The respondent admits that he had a conversation with Downes' attorney over the telephone, but denies the attorney's testimony as to what that conversation was. There is no claim that there is any law of this state which authorizes such a notice, or that an action or any legal proceedings had been commenced by the furniture company against Downes. We are satisfied from a consideration of this testimony that at the interview over the telephone notice was given to the respondent that a circular claiming that Downes' wages would be garnished had been received by Downes, and that there was then no repudiation by the respondent of the circular, or of the authority of those by whom it was sent. Downes' attorney had the circular in his possession, and it is quite unreasonable to suppose that, under such circumstances, no mention should be made of the nature of the notice which had been received. The referee, however, has found that the respondent had no knowledge that such circulars were being sent out under his name, and that, as soon as he ascertained the nature of the notices sent, he repudiated the authority of the furniture company to send them and terminated his relations with the furniture company.

The second charge, which is undisputed and of which the referee has convicted the respondent, arises out of a power of attorney given in pursuance of an agreement between himself and this furniture company, by which, accepting the respondent's version of the transaction, he, in consideration of the receipt by him of furniture, the retail price of which was $150, gave a power of attorney to two employés of the furniture company to sign his name "to any and all letters of collection and other business relating to or in connection with the business of the Empire Furniture Company of the borough of Manhattan, city and state of New York, as long as my said attorneys in fact shall remain in the employ of the said Empire Furniture Company." The respondent testified that about three or four months previous to the arrangement which he made with the furniture com-

pany he was requested to go to the office of the company; that a Mr. Rosenfeld, who appeared to be in charge of the business there, stated to the respondent that the furniture company required an attorney by the year, and asked the respondent what he wanted to handle their business, to make a contract to do all their work, and the respondent finally agreed to accept $500 for the first year. The company thought $500 too much to begin with, and it suggested an arrangement for $100 a year for which letters of collection were to be signed by the respondent, and that arrangement was finally agreed to. The respondent was then referred to a Mr. Michaels, who had charge of this branch of the furniture company's business, and from him the respondent received his instructions. The respondent's testimony as to this arrangement was that the respondent was to draw up letters for collection in the usual form. These letters were to be sent to people that owed the furniture company money, and Michaels was to draw them up and submit them to the respondent for his approval. Some forms were finally submitted to the respondent for his approval which he approved, and gave a copy of his letter head to be printed upon these forms. Michaels then said that they had a girl in his office who had been in a law office, and that, if the respondent approved of the letters, she could sign his name per her own, and that the respondent might as well give the furniture company a power of attorney to have them signed. To this the respondent agreed, and drew up the power of attorney, which he executed and delivered to the furniture company. This power of attorney is as follows:

"Know all men by these presents that I, Arthur Rothschild, attorney and counsellor at law, have made, constituted and appointed, and by these presents to make, constitute, and appoint, Sophie Ebbinger and Jennie Aubrey my true and lawful attorneys for me and in my name, place, and stead to sign my name per their own to any and all letters of collection and other business relating to or in connection with the business of the Empire Furniture Company of the borough of Manhattan, city and state of New York, as long as my said attorneys in fact shall remain in the employ of the said Empire Furniture Company. This power of attorney to take effect on the date hereof, and shall terminate and expire on October 23, 1909, after which date it shall be out of force and effect giving and granting unto said attorneys full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully, to all intents and purposes, as I might or could do if personally present with full power of substitution and revocation, hereby ratifying and confirming all that my said attorneys shall lawfully do or cause to be done by virtue hereof.

"In witness whereof I have hereunto set my hand and seal the 23rd day of October, in the year one thousand nine hundred and eight.

"Arthur Rothschild. [Seal.]

"Sealed and delivered in the presence of B. E. Freed."

Thus it appears that this respondent, having been an attorney and counselor at law for over 20 years, deliberately drew up this instrument authorizing two persons in the employ of the furniture company to sign his name to "any and all letters of collection, and other business relating to or in connection with the business of the Empire Furniture Company, of the borough of Manhattan, city and state of New York, as long as my said attorneys in fact shall remain in the employ of the said Empire Furniture Company," and for that receiv-

ed money or furniture for the value of $100 or over. The respondent says that he had an understanding by which only letters should be, signed in his name that he had approved. There is no such limitation, however, in the power of attorney itself. By it he gave unlimited power to sign letters of collection and other business relating to or in connection with the business of the furniture company. No notice appears to have been given to the persons that he appointed as his attorneys as to any limitation upon their power, and the parties proceeded under this power of attorney as though there was no such limitation. It would appear absurd for a lawyer to claim that having drafted and executed this instrument giving unlimited power to two employés of a company to sign his name to letters and communications relating to the business of the company was relieved from responsibility for the act of his agents because of some conversation with others as to what his agents should do under the power of attorney that he had given. One would think that an experienced lawyer, drawing up such an instrument authorizing others to act for him and to sign his name to letters which would necessarily purport to be written by him, would place in the power of attorney any limitation as to the authority granted, and the respondent cannot, under the circumstances, escape the responsibility for the acts of those constituted by him his agents within the express terms of the power granted.

The serious question, however, that is presented is whether the execution and delivery of this power of attorney was such unprofessional conduct as requires discipline. On his admission to practice an attorney becomes a public officer. He is required to take the constitutional oath of office. Code Civ. Proc. § 59, now section 466 of the judiciary law (chapter 35, Laws 1909 [Consol. Laws, c. 30]). Section 72 of the Code of Civil Procedure, now section 479 of the judiciary law, provides that:

"If an attorney knowingly permits a person not being his general law partner, or a clerk in his office, to sue out a mandate, or to prosecute or defend an action in his name, he and the person who so uses his name, each forfeits to the party against whom the mandate has been sued out, or the action prosecuted or defended, the sum of fifty dollars, to be recovered in an action."

Section 63 of the Code of Civil Procedure, now section 271 of the penal law (Consol. Laws, c. 40), make it a misdemeanor for a person to appear as an attorney in a court or before any magistrate or make it a business to practice as an attorney in a court or before a magistrate, unless he has been regularly admitted to practice as an attorney or counselor in the courts of record in this state. Sections 149 and 150 of the Penal Code, now section 277 of the penal law, makes it a misdemeanor for an attorney knowingly to permit any person, not being his general law partner or clerk in his office, to sue out any process or to prosecute or defend any action in his name, except as authorized by this section. These sections illustrate the policy of the state in prohibiting those holding the responsible office of attorney and counselor at law from allowing others to practice law in their names; and, while the Legislature has only made it a crime for an attorney to allow a person not being his law clerk or partner to know-

ingly permit any person to sue out any process, or to prosecute or defend an action in his name, for an attorney to authorize persons not in his employ or under his control to sign letters or communications threatening legal proceedings is entirely inconsistent with the performance of the duties assumed by a person upon becoming a member of the profession. An attorney held a public office. He assumes duties to the state, as well as his clients, and, when acting in his professional capacity in giving advice to his clients, or acting with his clients for others, he is performing a function of his office, and is responsible for the methods which he or his representatives adopt in the performance of his duties. We think it inconsistent with the performance of the duties assumed by an attorney when he accepts his office to sell the right to use his name as an attorney and to enter into any arrangement by which others who are not directly connected in business with him as partners or clerks are authorized to sign letters in his name, or to use his name in the transaction of their business, is a serious violation of an attorney's duties to the state, and serious professional misconduct. The arrangement testified to in this case was not at all a professional employment. The respondent was to perform no professional services for the furniture company for which he was to be paid a fee. What he did was to allow this furniture company or its employés to use his name as an attorney to enforce the collection of their demands, and to authorize the employés of the furniture company to sign his name to communications for that purpose, and for that he was to receive a sum of money. He says that he agreed with another employé of the company that the agents that he appointed should only sign such letters in the form which he had approved; but, as before stated, there was no such limitation of authority in the power of attorney, and no notice of such a limitation was given to the agents appointed by the respondent, and what has happened in this case was sure to happen under such an arrangement. Communications were sent prepared by those who were not under the obligations which are assumed by and imposed upon an attorney and the name of the attorney thus used for illegitimate and improper purposes. The making of such an arrangement and giving such a power of attorney was a violation of the obligation assumed by the respondent, and was necessarily inconsistent with the proper performance of his duties, and could have but one result, namely, to prostitute the office which the respondent held for many years and to bring it into disrepute and disgrace.

We have seriously considered the penalty which should follow from this violation of the duty of the respondent. The respondent was not a young and inexperienced man, just admitted to practice, the seriousness of whose offense could be palliated by lack of knowledge, and we do not think that we would be justified in passing over this offense without an infliction of some penalty; but it is the first time that this particular offense has been brought to our attention; and while, after this expression of the views of the court, we should regard such an offense as requiring disbarment, we think that in this case we should not impose that extreme penalty, but suspend the re-

spondent from practice for one year, and until the further order of the court, with leave to apply for reinstatement after the expiration of said year upon satisfactory proof that during said year he has actually abstained from attempting to practice as an attorney and counsel- or at law, and has otherwise properly conducted himself.  All concur.