■ In the Matter of JAMES A. SCOTT, Petitioner, v JAMES

WETZLER, as Commissioner of the Department of Taxation and Finance of the State of New York, et al., Respondents. [600 NYS2d 974] —Levine, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Taxation and Finance which found petitioner guilty of insubordination.

Petitioner was employed in December 1991 as the sole Principal Attorney in the estates, bankruptcies and collections unit of the Department of Taxation and Finance (hereinafter the Department) supervising one Senior Attorney and one support person. That unit is responsible, *inter alia,* for giving advice to Department tax attorneys and appraisers and assisting in the collection of unpaid taxes. In November 1991, petitioner's supervisor, Terrence Boyle, Director of the Department's Law Bureau, informed petitioner that due to departmental layoffs he was being assigned the new responsibility of signing income executions. The executions are documents which are required in order to garnish the wages of delinquent taxpayers. They are based on tax warrants and are prepared by the Department's Compliance Division. The signature of an attorney is required on income executions *(see,* CPLR 5230 [b]; *see also,* CPLR 5231). Petitioner was instructed to familiarize himself with the income execution process.

Petitioner voiced concerns that by signing the income executions he would be subjecting himself to personal liability, and to charges of violating the Judiciary Law and the Code of Professional Responsibility in that he would be signing a document prepared by someone else, the accuracy of which he would be unable to validate. Boyle advised petitioner by memorandum dated December 20, 1991 that he was responsible as Principal Attorney to the Compliance Division for signing the income executions and for taking steps as necessary to verify the underlying information and due issuance of tax warrants, and that this duty was within the scope of his employment for purposes of Public Officers Law § 17. A memorandum was also issued by William Collins, Deputy Commissioner and Counsel to the Department, ordering Department attorneys to sign the income executions after taking reasonable steps to verify them.

Income executions were sent to petitioner on December 30, 1991 and Boyle repeated his "direct order" that petitioner sign the executions; petitioner refused and returned them unsigned. Disciplinary charges were brought against peti-

tioner for insubordination based on his refusal. After a disciplinary hearing was held pursuant to Civil Service Law § 75, the Administrative Law Judge (hereinafter ALJ) sustained the charge of insubordination and recommended the penalty of suspension from work without pay for three days. The Director of Labor Relations, the designee of respondent Commissioner of Taxation and Finance, accepted that recommendation. Petitioner then commenced the instant CPLR article 78 proceeding which was transferred to this Court.

Petitioner concedes that he refused his supervisors' directives that he sign the income executions, but contends that his refusal was justified. We disagree. The refusal to obey legitimate orders of a superior has consistently been held to constitute insubordination warranting disciplinary action under Civil Service Law § 75 (see, Matter of Short v Nassau County Civ. Serv. Commn., 45 NY2d 721, 722; Matter of Plante v Buono, 172 AD2d 81, 83, lv denied 79 NY2d 756; Matter of Strokes v City of Albany, 101 AD2d 944). We are unpersuaded by petitioner's contention that his noncompliance was justified under Judiciary Law §§ 476 and 492, which generally prohibit an attorney from permitting someone not affiliated with the attorney to prosecute a proceeding or action in his or her name. The income execution forms clearly designate the "Commissioner of Taxation and Finance" as the judgment creditor and, thus, the executions were not being prosecuted in petitioner's name.

Equally misplaced is petitioner's reliance on Canon 3 of the Code of Professional Responsibility, which instructs that attorneys should assist in preventing the unauthorized practice of law. Petitioner's compliance with the directive to sign the executions after verifying their accuracy would not constitute fostering the unauthorized practice of law (see, Code of Professional Responsibility EC 3-5).

Petitioner's claims of justification for noncompliance rest on his unsubstantiated assertions that he was expected to sign the executions without any opportunity to satisfy himself that they were valid or, alternatively, that he did not have access to adequate information to verify their accuracy. However, petitioner was repeatedly notified that the responsibility for signing the executions included satisfying himself that the proceedings which gave rise to them were valid and accurate, and he was directed to familiarize himself with both the process and the available computer information. The case of Matter of Rothschild (140 App Div 583), on which petitioner relies, is distinguishable from the instant matter. Rothschild

involved an attorney suspended from practice for authorizing employees of a furniture company to sign his name to any and all "letters of collection" in exchange for furniture *(supra,* at 584). That case is distinguishable from this case, where petitioner was directed to personally sign documents whose accuracy he was expected to check to his satisfaction. Likewise, the 1965 and 1987 opinions of Department Counsel, relative to the prior proposed practice of administrative use of Department attorney signatures on executions without any opportunity for the attorney to review the process or executions, are inapposite. Further, the testimony showed that any necessary verification could be accomplished by consulting with the Compliance Division which prepares the executions or by checking the case history in the Department's "Case and Resource Tracking" computer system. Petitioner failed to show that the Department data available to him was inadequate for verification purposes justifying his refusal, or that verification would take an inordinate amount of time in excess of reasonable work hours for a staff professional. There being substantial evidence for a finding of insubordination and rejection of petitioner's justification defense, respondents' determination must be confirmed *(see, Matter of Silberfarb v Board of Coop. Educ. Servs.,* 60 NY2d 979, 981; *300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 179-180; *Matter of Plante v Buono, supra,* at 85).

We also find petitioner's further contention that procedural errors were committed at the hearing by the ALJ which deprived him of due process to be without merit. It was proper for the ALJ to admit into evidence on notice to petitioner his performance evaluations indicating that his work needed improvement, as they were relevant to the determination of an appropriate sanction *(see, Matter of Bal v Murphy,* 43 NY2d 762, 763). There is no support in the record for petitioner's contention that these evaluations were considered by the ALJ in the adjudicatory determination of his guilt *(see, Matter of Bigelow v Board of Trustees,* 63 NY2d 470, 472; *cf., Matter of Simpson v Wolansky,* 38 NY2d 391) and the nonappealable evaluations were final *(see,* 4 NYCRR 35.6 [b] [2]). Further, petitioner was afforded the opportunity to rebut their contents and to introduce favorable material from his employment file *(see, Matter of Bigelow v Board of Trustees, supra,* at 474). Finally, we find petitioner's remaining arguments to be without merit.

Thus, petitioner having been afforded his due process opportunity to prepare a defense and present evidence *(see, Matter*

*of Francis v West,* 81 AD2d 714, 715) and there being sufficient evidence to support the determination of guilt, it must be confirmed *(see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra,* at 179).

Weiss, P. J., Crew III, Mahoney and Casey, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.