In the Matter of FREDA K. RALPH, Appellant, against BOARD OF ESTIMATE OF THE CITY OF NEW YORK et al., Respondents.

Argued January 19, 1954; decided April 8, 1954.

*Stephen J. Rudd* and *Irving L. Bruns* for appellant. I. There was no triable issue in this proceeding. (*Matter of Rumsey Mfg. Corp. [Corsi]*, 296 N. Y. 113; *Matter of Newbrand* v. *City of Yonkers*, 285 N. Y. 164.) II. The decision of respondents based upon the trial committee's findings is not supported by substantial evidence, nor is it based upon a reasonable inference from undisputed testimony. (*Matter of Larson* v. *Paine Drug Co.*, 218 N. Y. 252; *Matter of Gibbs* v. *Macy & Co.*, 214 App. Div. 335, 242 N. Y. 551; *Matter of Stork Restaurant* v. *Boland*, 282 N. Y. 256.)

*Adrian P. Burke, Corporation Counsel* (*Henry J. Shields* and *Seymour B. Quel* of counsel), for respondents. I. Petitioner cannot question the power of the Appellate Division to consider the matter *de novo*. Special Term was without power to pass upon the merits of the proceeding, since the proceeding was brought to review the determination of a hearing at which evidence was taken pursuant to statutory direction. (*Matter of Newbrand* v. *City of Yonkers*, 285 N. Y. 164; *Matter of Daley* v. *Board of Estimate of City of N. Y.*, 267 App. Div. 592; *Matter of Miller* v. *Kling*, 291 N. Y. 65; *Matter of Tiernan* v. *Walsh*, 294 N. Y. 299; *Matter of Humphrey* v. *State Ins. Fund*, 298 N. Y. 327; *Matter of Donahue* v. *Fletcher*, 299 N. Y. 227; *Matter of Burke* v. *Bromberger*, 300 N. Y. 248; *Matter of Lynch's Builders Restaurant* v. *O'Connell*, 303 N. Y. 408.) II. Petitioner failed to submit evidence, required by the statute, that the death of

such death was not the result of willful negligence on his part. (*Matter of Slattery* v. *Board of Estimate & Apportionment of City of N. Y.*, 271 N. Y. 346; *Matter of Scanlon* v. *Herald Co.*, 201 App. Div. 173; *Matter of Lampert* v. *Siemons*, 235 N. Y. 311; *Matter of Gibbs* v. *Macy & Co.*, 214 App. Div. 335, 242 N. Y. 551; *Matter of McCarter* v. *La Rock*, 240 N. Y. 282; *Matter of Scholtzhauer* v. *C. & L. Lunch Co.*, 233 N. Y. 12.)

LEWIS, Ch. J. This appeal presents for decision the question whether the appellant, the widow of Henry W. Ralph who was City Register of the City of New York at the time of his death, is entitled to an ordinary death benefit, or to an accidental death pension from the New York City employees' retirement system as a result of her husband's death.

The relevant statute is section B3–33.0 of the Administrative Code of the City of New York which provides in part as follows:

"DEATH BENEFITS; ACCIDENTAL DEATH BENEFITS.— Upon the accidental death of a member before retirement, provided that evidence shall be submitted to such board proving that the death of such member was the *natural and proximate result of an accident sustained while a member and while in the performance of duty at some definite time and place* and that such death was *not the result of wilful negligence on his part,* his accumulated deductions shall be paid to his estate, or to such persons as he has nominated or shall nominate by written designation, duly acknowledged and filed with such board. Upon application by or on behalf of the dependents of such deceased member, such board shall grant a pension of one-half of the final compensation of such employee:

"1. To his widow, to continue during her widowhood; * * *." (Emphasis supplied.)

It is not disputed that Henry W. Ralph, at the time of his death, was an employee of the City of New York, a member in good standing of its employees' retirement system, and that he met his death as a result of an automobile accident. If, within the language of section B3–33.0 (quoted *supra*) the decedent, at the time of the fatal accident, was "in the performance of duty at some definite time and place", his widow, the petitioner herein, is entitled to an accidental death pension rather

than an ordinary death benefit from the employees' retirement system.

The accident sustained by Henry W. Ralph occurred on January 30, 1948. As a result of injuries then suffered his death occurred on the following day. Thereafter the present petitioner-appellant applied to the New York City employees' retirement system for an accidental death pension based upon her claim that, at the time when and place where her husband met with fatal injuries, he was engaged in the performance of duty incident to his official position. The medical board of the retirement system — to which such applications are referred — determined that there was no proof that the decedent was engaged in the performance of duty at the time of the accident, and recommended to the Board of Estimate that the application for an accidental death pension be denied. Thereupon the Board of Estimate referred the matter to its secretary to act as a trial committee. Upon evidence taken at a hearing duly held the trial committee recommended that the application be denied upon the ground that the accident which befell the decedent and his subsequent death " were not sustained while in the performance of duty at some definite time and place." Thereafter the Board of Estimate by formal resolution denied payment of an accidental death benefit to the petitioner-appellant who subsequently brought the present proceeding to annul the Board's determination and to award her an accidental death pension.

At Special Term the determination of the Board of Estimate was vacated and the Board was directed to grant the petitioner-appellant an accidental death pension. At the Appellate Division, where the proceeding was considered *de novo* on the merits, the order of Special Term was reversed on the law, and the determination of the Board of Estimate was confirmed upon the asserted ground that " The record as presented does not disclose such a preponderance of proof in petitioner's favor as to require or authorize a contrary determination by the court."

It is conceded that the fatal injuries sustained by the decedent occurred when, upon leaving Romano's camera shop located at 117–02 New York Boulevard in Jamaica, he was struck by an

automobile southbound on that thoroughfare. Our inquiry goes to the question whether at that time and place he was engaged in performing a duty incidental to his official position.

Passing to evidence — which we regard as decisive — taken from the record made at the hearing before the trial committee named by the Board of Estimate and from affidavits which are a matter of record before us: It was established without contradiction that since 1945 the decedent — during his term of office as Register of the City of New York — had been engaged in an effort to develop a microfilm process by means of which instruments of conveyance filed in his office affecting the title to real property, and certain manuscripts, could be recorded and indexed more economically as to labor, cost and space. Under instructions received from the decedent the witness Romano, the proprietor of Romano's camera shop, was doing the experimental work, including the planning and building of a camera, a camera cabinet and the base mounting required for the particular functions the camera was to perform in which the microfilm was used. During a period in excess of two years while Romano and the decedent were collaborating toward the completion of this project, the decedent had made annual reports to the Mayor of New York concerning the development of the microfilm process. For this work — done by Romano under the decedent's direction as to measurements and other essential factors — Romano had been paid by the City of New York. In fact, there was evidence that Romano was paid by the city for the work he was doing on the day of decedent's accident. In addition it appears that, after the accident, there was found in a pocket of the coat decedent was then wearing an unexecuted draft of a new contract with Romano which contained new measurements for the camera cabinet — previously the subject of conference by Romano and the decedent — which contract covered future work to be done on the project by Romano.

As bearing upon what decedent was doing immediately prior to the time he was injured on January 30, 1948, it appears that during the afternoon of that day he made the last of his many visits to the Romano shop which was located in a building at the southwest corner of the intersection of New York and Foch Boulevards fronting upon New York Boulevard — a north-south

thoroughfare. From the testimony by Romano before the trial committee, and from a separate verified statement by him which stands uncontradicted in the record before us, we learn that it was decedent's custom periodically to inspect the progress of the work being done on the camera which was being built at Romano's camera shop and which was to be used in a demonstration to be conducted in the Bronx Register's Office for the photographing of city records. As to the particular reason for the decedent's visit to the camera shop on the afternoon he was injured, it appears from Romano's testimony that the decedent came there to confer with Romano and his mechanics for the purpose of checking measurements for a new cabinet, which measurements were to be inserted in a new contract, the lack of which had "held up" Romano's work on the camera and related items. That conference ended at 4:20 at which time the decedent left Romano's establishment. When doing so he called back to Romano — "So long, I will give you a buzz in the morning or come down myself." Within two to four minutes after decedent had left the shop through the front door which opens onto New York Boulevard, Romano was called back to the front window by the shouting of one of his mechanics. Upon looking to the right or south at a thirty-degree angle from the window Romano saw decedent's body lying in the roadway of New York Boulevard at a point twenty to twenty-five feet from Romano's position. At that time the pavement was dry, the decedent's body being six feet out into the roadway from a thick bank of snow along the curb.

Thus does the record make it clear that the decedent met with a fatal accident less than four minutes after he had left a conference with Romano and his staff and at a point but a short distance from the building where that conference took place — a conference which had no relation to his private business but related only to his collaboration in an effort, financed by city funds, which he had been making over a period of at least two years as Register of the City of New York, to better the public service his office was required to furnish.

The following finding by the Board of Estimate's trial committee has met with the approval of the Appellate Division:

"On all the evidence produced, and after hearing the witnesses and carefully considering the exhibits, your Trial Committee finds that the Claimant has not sustained her burden of proving that the death of the decedent occurred while in the performance of duty.

"Even assuming that the visit of decedent to the Romano camera establishment to see Mr. Romano was in the performance of duty, and in the opinion of your Committee there was substantial evidence that it was not, the accident occurred after such interview was completed and while decedent was on his own time and about his personal pursuits. The accident occurred after office hours and after the termination of his business with Mr. Romano, whichever way the nature of such business is regarded."

Finding in this record no evidentiary basis for the inference implicit in the trial committee's finding quoted above, we cannot agree with the Appellate Division's disposition of this case.

The evidence is not disputed that the decedent did not go to the Romano camera shop on private business. In each instance, including the occasion of his journey to and from the shop on the afternoon of the accident, he had gone there for purposes clearly in furtherance of his effort to improve the filing system in his office for the efficiency of which he was responsible as Register. It cannot be reasonably said that the instant he left the camera shop the official character of his mission — with incidental travel — ceased. The decedent's return to his office or to his home was a necessary complement to the mission which brought him from his office to the Romano shop. (Cf. *Matter of Oram* v. *Moon Co.*, 285 N. Y. 42, 46; *Matter of Gibbs* v. *Macy & Co.*, 214 App. Div. 335, 336–337, affd. 242 N. Y. 551.) Performance of official duty had prompted his conference with Romano and the technical staff in the latter's shop. When that conference ended he left promptly and we find in this record no evidence that at the time of the accident — which occurred immediately following his leave-taking — he was doing anything other than returning to his office or his home. Whatever his destination, it was still necessary for him to traverse the same route as he took from his office to the camera shop, for, even

if he were returning to his home, he would travel the same way as though returning to his office, but beyond it.

In reaching our conclusion in this case we are not unmindful that in *Matter of Stork Restaurant* v. *Boland* (282 N. Y. 256) this court, in defining the scope of judicial review of quasi-judicial administrative action, declared that " * * * where from the evidence either of two conflicting inferences may be drawn, the duty of weighing the evidence and making the choice rests solely upon the [administrative] Board " (p. 267). However, in that same opinion (pp. 273–274) will be found the following statement which has influenced us in reaching our present decision: " A finding is supported by the evidence only when the evidence is so substantial that from it an inference of the existence of the fact may be drawn reasonably. A mere scintilla of evidence sufficient to justify a suspicion is not sufficient to support a finding upon which legal rights and obligations are based. That requires ' such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' (*Consolidated Edison Co.* v. *National Labor Relations Board,* 305 U. S. 197, 229.) "

The order of the Appellate Division should be reversed and the proceeding remitted to the Board of Estimate for further proceedings not inconsistent with this opinion, with costs in this court and in the Appellate Division.

DESMOND, J. (dissenting). The New York City employees' retirement system, as set up under title B of chapter 3 of the city's Administrative Code, includes special benefits for members who suffer accidental deaths while in the actual physical performance of their official duties. On the death of any employee while a member of the retirement system, his estate or nominee is entitled to the return of his " accumulated deductions " plus a half-year salary or full-year salary, depending on length of service (Administrative Code, § B3–32.0). Appellant's rights to those " ordinary benefits " is conceded. But much different and greater benefits are available to the dependents of a member accidentally killed while on duty. In the latter case, besides the return to the member's estate or nominee of his " accumulated deductions ", there is payable to his dependents a *pension* of one half of the deceased employee's compensation

(Administrative Code, § B3–33.0). But the grant of such a pension is specifically conditioned on the production of proof by the applicants therefor, that death resulted from an accident sustained " while in the performance of duty at some definite time and place ". To give this statutory language any meaning at all, we must read it as saying that a " pension " (Administrative Code, § B3–33.0) as distinguished from an " ordinary death benefit " (Administrative Code, § B3–32.0) requires an affirmative showing of death from an accident sustained by the member at the " definite time and place " of his actual, physical work for the city. (Unless such was the intent, the use of the words " definite time and place " was without purpose.)

Obviously, petitioner did not prove that her late husband's fatal accident was at the time and place of his employment. The exact opposite appears without dispute, since he was run down by an automobile in the street, while on his way home from the camera shop. This is not a workmen's compensation case where one who is returning home after an errand for his employer may raise a question of fact as to " arising out of and in the course of employment " (Workmen's Compensation Law, § 2, subd. 7), but even in such a case a fact finding against the claim could not be set aside on appeal. Quite differently, the statute we are construing puts on the survivors the burden of proof that the death-causing accident occurred at the actual time and place of employment. So, even if Mr. Ralph's business at the camera shop had some relation to his duties as City Register, it still could not be said, as matter of law, that the decision against the claim was unfounded.

With the fairness of this strict statute we cannot concern ourselves, but we must remember that what is here involved is the grant of a pension for a service-connected death, in addition to ordinary death benefits.

The order should be affirmed.

CONWAY, DYE, FULD and FROESSEL, JJ., concur with LEWIS, Ch. J.; DESMOND, J., dissents and votes for affirmance in an opinion in which VAN VOORHIS, J., concurs.

Order reversed, etc.