*179 OPINION OF THE COURT
Cooke, J.
Petitioner, 300 Gramatan Avenue Associates, owns an apartment building with about 96 units in the City of Mount Vernon. In March of 1975, one of its tenants, Frank Interdonti, a postal worker, told Harold Johnson, a Black friend who served as passport agent and registry clerk at the same post office, that there was an apartment available upstairs at his address. Johnson went to the premises on March 10, 1975, examined a vacant five-room apartment and, after talking with the superintendent, attempted to rent it. Told a bit later that day that the apartment was "under litigation” and not available for rental, Johnson filed a complaint two days later with the State Division of Human Rights.
The commissioner of said division, after a hearing, determined that petitioner, in violation of the Human Rights Law, had discriminated against Johnson because of his race and color, by refusing to consider him as a prospective tenant for an available apartment. The State Human Rights Appeal Board affirmed. In a proceeding under section 298 of the Executive Law to review the order of the appeal board, the Appellate Division, one Justice dissenting, held that the determination of the commissioner as affirmed by the board was not supported by substantial evidence and that the findings made were arbitrary and capricious, granted the petition of the owner, on the law, annulled the order and dismissed the complaint.
Underlying this appeal is the issue of whether the order of the commissioner was "supported by substantial evidence on the whole record”, to which the review of the appeal board was limited (Executive Law, § 297-a, subd 7, par d; see, also, par e). If the findings of fact, on which the order of the appeal board was based, were "supported by sufficient evidence on the record considered as a whole”, we are directed by statute that they are conclusive and that order should not be disturbed (Executive Law, § 298; City of Schenectady v State Div. of Human Rights, 37 NY2d 421, 424).
Generally speaking, upon a judicial review of findings made by an administrative agency, a determination is regarded as being supported by substantial evidence when the proof is "so substantial that from it an inference of the existence of the fact found may be drawn reasonably” (Matter *180 of Stork Rest. v Boland, 282 NY 256, 273; Labor Bd. v Columbian Co., 306 US 292, 299; see 1 Benjamin, Administrative Adjudication in New York 328-340; Advisory Comm. on Practice and Procedure [2d Preliminary Rep, 1958] 399).* This general rule, this statement of meaning, likewise applies to a judicial examination of findings of the State Commissioner of Human Rights (Matter of Holland v Edwards, 307 NY 38, 44). So too, where there is room for choice, neither the weight which might be accorded nor the choice which might be made by a court are germane upon an analysis for the presence of substantial evidence before the commissioner (State Div. of Human Rights v Columbia Univ. in City of N. Y., 39 NY2d 612, 616; Matter of Stork Rest. v Boland, 282 NY 256, 267, supra).
The concept of substantial evidence, a term of art as related to administrative decision making, is rather easily verbalized but, when put to use in respect to a particular determination, frequently causes difficulty and disagreement, as witnessed here by the divergence at the Appellate Division (see Matter of Stork Rest. v Boland, 282 NY 256, 274, supra; see, also, Matter of Paulsen [Catherwood], 27 AD2d 493, 495). It is related to the charge or controversy and involves a weighing of the quality and quantity of the proof (Matter of Di Nardo v Monaghan, 282 App Div 5, 7; McCormick, Evidence [2d ed], § 352); it means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact (New York State Labor Relations Bd. v Shattuck Co., 260 App Div 315, 317). Essential attributes are relevance and a probative character (Edison Co. v Labor Bd., 305 US 197, 229; Matter of Ralph v Board of Estimate of City of N. Y., 306 NY 447, 454). Marked by its substance — its. solid nature and ability to inspire confidence, substantial evidence does not rise from bare surmise, conjecture, speculation or rumor (cf. Matter of Milea v Easy Appliance Div., Murray Corp., 29 AD2d 730). More than seeming or imaginary, it is less than a preponderance of the evidence, overwhelming evidence or *181 evidence beyond a reasonable doubt (see People ex rel. Consolidated Water Co. v Maltbie, 275 NY 357, 370; Matter of Erin Wine & Liq. Store v O’Connell, 283 App Div 443, 446, affd 307 NY 768; Matter of Paulsen [Catherwood], 27 AD2d 493, 495, supra; cf. State v Randecker, 79 Wn 2d 512, 517-518; District of Columbia v Heman Ward, Inc., 261 A2d 836, 840 [DC]).
Whether an administrative agency determination is shored up by substantial evidence is a question of law to be decided by the courts (Matter of Clark v Board of Zoning Appeals of Town of Hempstead, 301 NY 86, 90-91, cert den 340 US 933; Matter of McGuinn v Woolworth Co., 277 App Div 1066), it having been stated with some frequency that insufficient evidence is, in the eyes of the law, no evidence (Matter of Case, 214 NY 199, 203-204; Matter of 54 Cafe & Rest, v O’Connell, 274 App Div 428, 431). Judicial review of the determination made by an administrative agency, such as the State Division of Human Rights, is limited to a consideration of whether that resolution was supported by substantial evidence upon the whole record (Matter of Holland v Edwards, 307 NY 38, 44, supra; see State Administrative Procedure Act, § 302, subd 3; § 306, subd 1; CPLR 7803, subd .4; Matter of Kelly v Murphy, 20 NY2d 205, 209); and allowance may not be made for information outside of it (Matter of Simpson v Wolansky, 38 NY2d 391, 396). A practical test, employed in ascertaining whether the proof is "so substantial that from it an inference of the existence of the fact found may be drawn reasonably”, is found in measuring the evidence against the standard of sufficiency such as to require a court to submit it as a question of fact to a jury (Matter of Stork Rest. v Boland, 282 NY 256, 273, supra; Erin Wine & Liq. Store v O’Connell, 283 App Div 443, 446-447, affd 307 NY 768, supra).
 A court reviewing the substantiality of the evidence upon which an administrative agency has acted exercises a genuine judicial function and does not confirm a determination simply because it was made by such an agency (Matter of McCormack v National City Bank, 303 NY 5, 8-9). In final analysis, substantial evidence consists of proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably — probatively and logically (cf. Matter of Di Nardo v Monaghan, 282 App Div 5, 7, supra; Matter of Thomas v Codd, 51 AD2d 418, 420; Matter of Phinn *182 v Kross, 8 AD2d 132, 137; 24 Carmody-Wait 2d, Proceeding Against Body or Officer, § 145:350). Put a bit differently, "the reviewing court should review the whole record to determine whether there is a rational basis in it for the findings of fact supporting the agency’s decision” (McCormick Evidence [2d ed], § 352, p 847; see Matter of Pell v Board of Educ., 34 NY2d 222, 231; Siegel, New York Practice [1978], § 560, p 783).
As in Stork Rest. (282 NY, at p 267 et seq.), we brief the testimony to the extent necessary to discover and decide whether there was evidence which adequately upholds the commissioner’s and thus the appeal board’s determination. Here, there was evidence, inter alia: that in December, 1974 apartment D55 consisting of five rooms became vacant or abandoned, the former tenant having moved out in November and having last paid the rent for that month; that Interdonti, a tenant in the building, told fellow worker Johnson that an apartment was available there; that on the morning of March 10, 1975 Mrs. Interdonti contacted Rosemann, the building superintendent, and then reported that the apartment was available and could be seen that afternoon and that the rent was $225; that upon Johnson’s arrival on the premises Mrs. Interdonti contacted Rosemann and arrangements were made that Johnson and Rosemann meet at the vacant quarters; that upon seeing and meeting Johnson, Rosemann stated he did not know whether he had the key but, upon checking, found it in his pocket; that after looking around, Rosemann asked Johnson if he wanted the apartment and the latter replied he did; that when Johnson said he liked the rooms, Rosemann replied "Well, did you look around?”; that when Johnson said he wanted the apartment, Rosemann said "Well, are your sure you want this apartment because, you know, I have some more”; that after discussing the rent, Johnson said he would have to go to the bank to get $450, representing one month’s rent and security, and that he would be back in 10 or 15 minutes; that upon return Johnson rang the bell at the superintendent’s apartment and someone inside said "just a minute”; that no one came to the door and the bell was rung again and, after a 10-minute wait, Rosemann came out and said "I have just talked to the boss and he told me that the apartment was under litigation and I can’t rent the apartment.” Rosemann failed to mention to Johnson the availability of apartment D54, a very large four and a half room *183 apartment, located on the floor below which was expected to be available for rental in a week or two.
Significantly, Manzo, the building’s managing agent, admitted that apartment D55 in fact was not in litigation on March 10, 1975 and, furthermore, no action had even been commenced against the prior tenant, even up to the time of the hearing. Additionally, it was evidence: that in December, 1974 the lock on the apartment had been changed by Rosemann and the apartment had been painted and cleaned by him around the Christmas season so as to be physically ready for rental in the ensuing January or February; that sometime around the holidays Manzo told the superintendent that he was going to ask $225 for the apartment when cleaned and painted; that, contrary to Manzo’s version, Rosemann was not told prior to Johnson’s visitation that the subject apartment was not to be shown; that, at the time Johnson came, there was a large four and one-half room apartment available and Manzo had no recollection of telling the superintendent to show it to Johnson; that in early April the apartment was rented to others for $225; and that in March only one of the 90-odd tenants was Black and he had moved away prior to the hearing.
In no uncertain terms, the Human Rights Law provides "[i]t shall be an unlawful discriminatory practice for the owner * * * or managing agent of, or other person having the right to * * * rent or lease a housing accommodation, * * * or any agent or employee thereof: (1) To refuse to * * * rent, lease * * * such a housing accommodation because of the race * * * color * * * of such person or persons” (Executive Law, § 296, subd 5, par [a], cl [1]). In assaying the record before us to determine the existence of substantial evidence, three underlying principles should be borne in mind: the statute is to be "construed liberally for the accomplishment of the purposes thereof’ (Executive Law, § 300); wide powers have been vested in the commissioner in order that he effectively eliminate specified unlawful discriminatory practices (Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights, 35 NY2d 143, 146-147; Gaynor v Rockefeller, 15 NY2d 120, 132); and discrimination is rarely so obvious or its practices so overt that recognition of it is instant and conclusive, it being accomplished usually by devious and subtle means (State Div. of Human Rights v Kilian Mfg. Corp., 35 NY2d 201, 209; Matter of Holland v Edwards, 307 NY 38, 45, supra). *184 Thus guided in our review, we determine that the commissioner’s findings are amply supported.
Review here, buttressed by these sound precepts, points to the irresistible * conclusion that there is sufficient evidence in the record to support the commissioner’s findings. A number of items — the vacancy of the apartment, its preparations for and readiness for rental, the failure to notify the superintendent that the apartment was not to be shown, the communication that it was available at a specified rental, the meeting with the superintendent at the apartment site for the purpose of exhibition, his concern about the key upon seeing the Black prospect, his inquiries of the prospect as to whether the unit did in fact please when the prospect had already indicated enthusiastic acceptance, the failure to halt the prospect’s departure to the bank to secure the down payment, the extended wait outside the superintendent’s door upon return, the proffered excuse that the apartment was in litigation when in fact it was not and reasonably would not be, the failure to show another vacant apartment of similar size, the lack of proof of any suggestion by the managing agent that such other vacancy existed, the failure to obtain normal background particulars concerning the prospect, the subsequent lease for the same rental, and the dearth of Black tenants in the building — yield the inference and basis on which the discriminatory practice, as found, might have been deduced reasonably and properly.
That the discrimination practiced upon complainant was intentional is readily inferrable. There was proof of minimal out-of-pocket expenses for transportation incidental to viewing the apartment. More importantly, complainant believed, and quite reasonably so, that he had been "discriminated against.” That mental anguish and upset resulted from this belief, particularly when the objectionable activity occurred in the presence of a personal and business acquaintance, is obvious. Such distress follows such bias and exclusion as night follows day. Under all the circumstances, in view of the strong statutory policy to be effected and considering the size of the award, the statutory standard has been met and the award of compensatory damages should not be disturbed (see Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights, 35 NY2d 143, 147, supra; State Comm. for Human Rights v Speer, 29 NY2d 555, revg on dissenting opn at App Div 35 AD2d 107, 113).
*185 Accordingly, the order of the Appellate Division should be reversed, with costs, the order at the State Human Rights Appeal Board reinstated and the cross motion for an order enforcing the award granted.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler and Fuchsberg concur.
Order reversed, etc.

The legal residuum rule and the doctrine, based on the language of former subdivision 7 of section 1296 of the Civil Practice Act, that annulment was in order where the agency’s findings were such that a jury’s verdict to the same effect "would be set aside by the court as against the weight of evidence” no longer obtain, regardless of whatever validity, if any, they may have once enjoyed (see 8 WeinsteinKorn-Miller, NY Civ Prac, par 7803.09; 23 Carmody-Wait 2d, Proceeding Against A Body or Officer, § 145.20; see, also, Toch, Judicial Review of Administrative Determinations in New York State, 24 Albany L Rev 95, 115-119 [1960]).