Meyer, J.
(dissenting). Without reaching the “place of accommodation” issue or the city’s relationship to the marathon, the majority concludes that there is no evidence of discrimination and that the Roadrunners Club, as a private organization, can conduct a marathon footrace if it chooses. It thus ignores both the interpretation of the statute and the findings of fact made by the Commissioner of the State Division of Human Rights and affirmed by the State Human Rights Appeal Board, notwithstanding the deference given to the interpretation of a statute by the agency responsible for its administration and the command of section 298 of the Executive Law that the findings of fact on which a division order is based “shall be conclusive if supported by sufficient evidence on the record considered as a whole.” I respectfully dissent.
The record contains a letter from Fred Lebow addressed to Robert J. Hall, rejecting his entry into the 1978 New York City Marathon and stating that “we must turn down your entry and those of any other athletes in wheelchairs.” The majority’s holding that there is no discrimination, if it is based on an absence of substantial evidence, is, therefore, a usurpation of the function of the commissioner.
In failing to consider the city’s relationship and the place of public accommodation question, the majority ignores affirmed findings that the New York City Marathon, which respondents organize and sponsor, is “an annual athletic competition open to the public at large, and using public facilities” and that the 1978 New York City Marathon (which is the subject of this proceeding) “took place in or about October, 1978, again using park roads, streets and other public facilities and sponsored by New York City departments and agencies.” The statutory definition (Executive Law, § 292, subd 9) of “ ‘place of public accommodation’ ” excludes “any institution, club or place of accommodation which is in its nature distinctly private”, but includes “all places included in the meaning of such terms as *** race course.” The commissioner concluded that, because the public was invited to respondent’s race course, which was made available to it by the city, respondents “were the managers and superintendents of a place of public accommodation, the course over which the New *128 York Marathon was run”, and both the appeal board and the Appellate Division agreed. Notwithstanding that respondents did not have exclusive use of the highways over which the race was run, they did superintend and manage so much of those highways as the course was run over, making changes such as the placing of asbestos mats over expansion joints of bridges to prevent injury to the runners. The conclusion that respondents manage a “place of public accommodation” was neither irrational nor unreasonable and was not contrary to the wording of the statute. It should, therefore, be upheld (Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451; Matter of Howard v Wyman, 28 NY2d 434). Nor may any significance be given to the failure of the city to have withdrawn respondents’ permit, for there was no reason to do so in 1978 (wheelchair entrants were permitted to enter after the Mayor intervened) and there is nothing in the record as to later years.
In final analysis, the majority’s reasoning appears to turn on its conception that “a marathon foot race” is as a matter of law “a traditionally and *** an historically-rooted athletic event”, essentially the reasoning adopted by the Appellate Division. Neither the dictionary definition, nor judicial decision, nor the evidence concerning marathons run in other cities sustains that conception, however. The Columbia Encyclopedia (3d ed) defines a “marathon race” as a “long-distance endurance race deriving its name from Marathon Greece” (p 1305; emphasis supplied). Webster’s Third New International Dictionary (p 1380) defines “marathon” as “a long distance race: (1): a footrace run on an open course of now usu. 26 miles 385 yards (2): a race other than a footrace (as for swimmers, skaters) marked by esp. great length”. A Texas Court of Civil Appeals in Sportatorium, Inc. v State (104 SW2d 912, 916 [Tex]) concluded as to “marathon” that “its modern meaning is any race or physical endurance contest” (see, also, Weaver v Stone, 11 F Supp 559, 560), and the evidence presented before the hearing examiner established that wheelchair participants have been accepted in marathons run in Miami, Florida, Tampa, Florida, Jacksonville, Florida, Atlanta, Georgia, Scottsdale, Arizona, Toledo, Ohio, Wheeling, West Virginia, Charleston, West Virginia and *129 Boston, Massachusetts, among others. Clearly, therefore, there was an evidentiary basis for the commissioner to conclude that, notwithstanding that Pheidippides carried the news of victory over the Persians from Marathon to Athens in 490 B.C. on foot, a marathon race is no longer limited to foot racers only, especially in view of the city’s requirement that if respondents were to be permitted to use city streets as their race course, wheelchair entrants must be permitted.
Even if a marathon is limited to a footrace, the law requires that persons disabled from using their feet be permitted to enter if the race is held in a place of public accommodation. To hold otherwise is to ignore the statutory definition of “disability.” Subdivision 21 of section 292 of the Executive Law defines that term to mean “a physical, mental or medical impairment resulting from anatomical, physiological or neurological conditions which prevents the exercise of a normal bodily function” provided it does not prevent “performing in a reasonable manner the activities involved in the job or occupation sought.” Inability to use one’s feet is an impairment of a normal bodily function,[1] but, as the evidence concerning wheelchair participants in New York and other cities showed, does not prevent such a participant from performing in the marathon in a reasonable manner. To hold that only people with feet they can use normally may participate because the event is a footrace is wholly to ignore the meaning of disability.[2] In short, the commissioner’s finding that wheelchair athletes “utilize their chairs as a substitute for their feet to overcome their disability” is both a reasonable interpretation of the statute and supported by substantial evidence.
As concerns the safety issue, not reached by the majority, it is only necessary to note that the commissioner’s conclusion that “[djespite the fact that wheelchairs have *130 been utilized by competitors in many road races, no provable danger to the health and safety of the participants has occurred” is supported by evidence well within the standard defined in 300 Gramatan Ave. Assoc. v State Div. of Human Rights (45 NY2d 176, 180-181).
In sum, the division’s holding, affirmed by the appeal board, was not an arbitrary or capricious interpretation of the governing statute and was sustained by substantial evidence in all of its factual aspects. Any complaint that the requirement thus imposed will adversely affect the sport may be addressed to the Legislature, or remedied by holding the race off the public thoroughfare (as, for example, fox hunts are) in which event as a private organization the Roadrunners Club can fix any entry criteria its membership will agree to. The Appellate Division should, therefore, have confirmed rather than annulled and we should reverse their order.
Chief Judge Cooke and Judges Jasen, Gabrielli, Wachtler and Fuchsberg concur in Per Curiam opinion; Judge Meyer dissents and votes to reverse in an opinion; Judge Jones taking no part.
Order affirmed.

. The argument that Hall has use of his feet may, if that use is found to constitute “normal bodily function,” require that he race on foot rather than in a wheelchair, but has no bearing on the question whether all wheelchair racers may be excluded.

. Nor is it relevant that other disabled persons such as runners without sight or without a limb (included one-legged persons) are admitted, for the issue is whether there has been discrimination against persons whose disability affects both feet, not whether all disabled persons have been excluded. Likewise irrelevant is it that persons using skateboards, bicycles and roller skates are excluded, for those persons have, but do not use, normal function in their feet.