■ In the Matter of JEFFREY ROTHSTEIN, Petitioner, v STANLEY BREZENOFF, as Administrator/Commissioner of the Human Resources Administration, et al., Respondents. — Determination of respondents, dated July 6, 1981, finding petitioner guilty of misconduct and dismissing him as a senior special officer of the Human Resources Administration, confirmed, and the petition dismissed, without costs and without disbursements. This CPLR article 78 proceeding was transferred to this court by order of the Supreme Court, New York County (Blyn, J.), entered on February 22, 1982. The petitioner was appointed a special officer of the Human Resources Administration (HRA) in 1972 and he was promoted to the position of senior special officer or sergeant in 1974. The incident that gave rise to the instant proceeding occurred in the late morning of December 6, 1978 in the Waverly Income Maintenance Center located at 12 West 14th Street, Manhattan. A client of the center, named Floyd Hendricks (Hendricks), became so disruptive that the civilian personnel at the center summoned special officers of the HRA. Responding were Special Officers Morey Cohen (Cohen), Bobbie Levy (Levy) and Clarence A. Scott (Scott). These officers were unsuccessful in calming Hendricks since Hendricks grabbed Levy in a kind of bear hug. This action by Hendricks resulted in his being quickly subdued by these three officers. As they were handcuffing Hendricks, Special Officer Ether Ramseur (Ramseur) and the petitioner came over to assist. The petitioner was in charge since he was a sergeant, and the senior officer present. As petitioner was assisting his subordinates, he suddenly yelled out: " 'this motherfucker bit me.' " Petitioner then jabbed his nightstick in Hendricks mouth, while Hendricks was being held by the four other officers. This blow caused Hendricks to bleed from the mouth and spit blood. Also, petitioner hit Hendricks across the chest with the nightstick. At the time that the officers were struggling with Hendricks there were between 100 and 200 clients in the center. During the struggle this crowd closed in around the officers. When petitioner struck Hendricks it almost triggered a riot. The crowd became so enraged that more officers had to be called so that order could be restored. In June, 1979 petitioner was served with disciplinary charges and specifications. In essence, the first specification charged him as a sergeant with using excessive physical force on Hendricks, which resulted in inciting the other clients to commit violence against officers; and, the second specification charged that his "actions endangered persons at the Center and interfered with the maintenance of the public peace" and that, as a sergeant, his "actions and use of unnecessary force against Mr. Hendricks set a bad example for [his] subordinates". A three-day disciplinary trial was held concerning the charges. At this trial three key witnesses against petitioner were his subordinate officers: Levy, Ramseur and Scott. Levy and Scott both testified that Hendricks had been subdued before petitioner hit Hendricks with the nightstick; and, *that* after petitioner hit Hendricks with the nightstick the clients rioted by calling the officers obscene names and throwing a chair at the officers. Levy testified: "he [petitioner] then took his nightstick and hit Hendricks in the face twice"; and, Ramseur testified that petitioner hit Hendricks "[o]nce maybe twice. I couldn't swear to how many". In addition, Steven W. Doughtry (Doughtry), an income maintenance specialist at the center, testified "the next thing you see Sergeant Rothstein * * * take out his nightstick and hit the guy twice, once across the face and another time across his chest." Examination of

the arrest report reveals that Hendricks was of slight build in that he was five feet, eight inches, tall and weighed 135 pounds. Petitioner testified in his own behalf. In the course of his testimony, petitioner admitted that the alleged bite wound was minor since "[t]o my knowledge, just his teeth marks were on my thumb", and, that, just before he used his nightstick, the crowd was large and hostile. Our examination of the record leads us to the conclusion that respondent administrator/commissioner's finding that the sergeant petitioner was guilty of the charges is supported by substantial evidence (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 230). Therefore, the administrator/commissioner's action was neither arbitrary nor capricious. In pertinent part the administrator/commissioner wrote: "I further find, as several officers and Mr. Doughtry testified, Sergeant Rothstein's actions which were taken in front of approximately two hundred clients, provoked anger among the crowd of clients and caused clients to shout angry remarks such as 'there's no need for the stick'. Following Sergeant Rothstein's actions, the clients surged forward, a chair was thrown which struck Sergeant Rothstein and other officers, and the crowd became so unruly that other officers had to be called for assistance. I find that Sergeant Rothstein's use of excessive force thus increased the dangerousness of an already difficult situation. I further find that Sergeant Rothstein's use of excessive force, which was done in the presence of at least four subordinate officers, violated his duty as a superior officer to set an example of proper conduct for his subordinate officers. Accordingly, I find Sergeant Jeffrey Rothstein guilty of Specification I, A and B 1 and Specification II, A and B." Unlike our dissenting brothers, we find that the penalty of dismissal imposed by the administrator/commissioner was not excessive. At page 240 of *Matter of Pell v Board of Educ.* (*supra*), the test to measure whether a penalty is excessive is set forth in these words: "[u]nless an irrationality appears or the punishment shocks one's conscience, sanctions imposed by an administrative agency should be upheld." Our dissenting brothers are in error when they write that there is no indication that anyone actually observed petitioner use his nightstick on Hendricks more than once. Levy and Doughtry, quoted *supra,* both testified that they observed petitioner strike Hendricks twice. Mistakenly, the dissent treats petitioner as just another special officer, when they attempt to justify his use of the nightstick by stating "petitioner struck out instinctively." Petitioner is a sergeant and is not expected to act "instinctively". As a superior officer, more is expected of him than from an untrained civilian. In the instant case, the penalty of dismissal was not an abuse of discretion. Petitioner's record was not unblemished as the dissenters contend. In pertinent part the administrator/commissioner wrote: "A finding of excessive use of force against a client is among the most serious offenses that can be committed by a special officer, whose job is to protect clients. Furthermore, the seriousness of the finding is herein magnified by the fact that Jeffrey Rothstein was a sergeant and as a superior officer had the additional responsibility of setting an example for his subordinate officers. In addition, an examination of Sergeant Rothstein's record during his career as special officer shows repeated instances in which he demonstrated extremely poor judgment and self-control. He interacted with fellow officers, superiors and coworkers in a manner that was neither temperate, nor professional. For instance, on more than one occasion, he made disparaging ethnic and racial remarks." Considering the seriousness of the offense committed by petitioner in the instant case, the penalty imposed upon him by the administrator/commissioner is neither irrational nor shocking to the conscience of this court. Concur — Ross, Bloom and Alexander, JJ.

Murphy, P. J., and Milonas, J., dissent in a memorandum by Milonas, J., as follows: This is a CPLR article 78 proceeding seeking review and vacatur of a

determination by respondents, the present and past commissioners of the Human Resources Administration, the Human Resources Administration (HRA) and others, which, after a disciplinary hearing, found petitioner guilty of certain charges and imposed a penalty of dismissal. On June 1, 1979, the petitioner was served with disciplinary charges alleging misconduct in having used excessive and unnecessary force in connection with an incident which occurred on December 6, 1978 at the Waverly Income Maintenance Center. At the departmental trial held in September and October of 1979, nine witnesses testified, six of whom were called by the HRA, one by the hearing examiner, and two by the petitioner, who was represented by counsel throughout the proceedings. Special Officer Scott stated that at approximately 11:45 A.M. on the day in question, he and Officers Levy and Cohen received a call from civilian workers in the center regarding a client, Floyd Hendricks, who was acting in a boisterous and abusive manner. Hendricks was apparently upset over a problem with his case, but, at the officers' request, he accompanied them to the public room where he discussed his grievances with them. However, after awhile, he left the public room and returned to the prescreening section. There he screamed and cursed at some civilian employees while over 200 other clients, who were also present in the area, watched. The three officers approached Hendricks and attempted to calm him down. Thereupon Hendricks grabbed Officer Levy, at which point Officer Levy seized Hendricks around the head, Officer Scott held his upper torso, and Officer Cohen clutched his legs. The officers then took Hendricks over to a nearby railing in order to handcuff him, which they endeavored to do. According to Officer Scott, Hendricks, who is five feet, seven inches tall and weighs about 135 pounds, was essentially under control by this time. A fourth officer, Officer Ramseur arrived to provide assistance, as well as the petitioner herein, Officer Rothstein. Petitioner, who had started to participate in the handcuffing effort, suddenly cried out that Hendricks had bitten him, jabbing Hendricks in the mouth with his nightstick. The welfare clients observing these events began to protest and crowded close to the officers. Someone threw a chair which hit three of the officers, including petitioner. In fact, the group became so unmanageable that it was necessary to radio for help in restoring order. Officer Scott purportedly noticed Hendricks bleeding from the mouth but did not discern any injury to petitioner's hand. Officer Scott's account was largely corroborated by other testimony; much of it was undisputed by the petitioner himself. Although Officer Levy described petitioner's hand as having "a little nip", petitioner did not claim that his wound, which he asserted was one-quarter inch in length, was serious. No stitches were required, and the only medical treatment involved was a tetanus shot. As to the amount of physical force applied against Hendricks by petitioner, according to many of the witnesses, petitioner hit Hendricks in the face with a nightstick one or more times. It is petitioner's contention that when he tried to hold Hendricks down, he was bitten on the thumb and resorted to the nightstick to push Hendricks' face down, thereby freeing his thumb. In contrast to other witnesses, who stated that the spectators may have been hostile prior to petitioner's use of force, but became obstreperous afterward, petitioner alleged that the crowd was unruly throughout the incident. The hearing officer, in his report dated November 9, 1979, concluded that it was not certain whether petitioner pushed his nightstick against Hendricks' face or actually hit him. He also found that Hendricks had not been entirely subdued when petitioner intervened, that petitioner did not employ excessive force and that there was no convincing evidence that the clients were incited to riot by petitioner's conduct. The hearing officer recommended dismissal of the charges. In a written decision dated July 23, 1980, Stanley Brezenoff, then the commissioner of HRA, determined that petitioner was guilty of the specifica-

tions against him and imposed a penalty of dismissal. Petitioner then commenced an article 78 proceeding challenging the administrative decision. In an order dated April 2, 1981, Special Term of the Supreme Court, New York County, remanded the matter for a written statement from HRA setting forth the essential facts or evidence relied upon by the commissioner. On July 6, 1981, James Krauskopf, who had succeeded Brezenoff as commissioner, issued a six-page determination which, after reviewing the evidence, rejected the factual findings of the hearing officer, held that petitioner had exerted excessive and unauthorized force and adhered to the original penalty of dismissal. Thereupon, petitioner instituted the instant article 78 proceeding, arguing in part that the commissioner's determination was not based upon substantial evidence and that the punishment imposed was excessive. In *300 Gramatan Ave. Assoc. v State Div. of Human Rights* (45 NY2d 176), the Court of Appeals declared that the standard by which an administrative decision should be evaluated is whether it is supported by substantial evidence. Substantial evidence is defined (p 180) as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact". However, a "court reviewing the substantiality of the evidence upon which an administrative agency has acted exercises a genuine judicial function and does not confirm a determination simply because it was made by such an agency" (p 181). In that regard, an examination of the record in the case at issue reveals that the extent of the force applied by petitioner apparently amounted to one strike or push in Hendricks' face with the nightstick. Moreover, petitioner did not hit or push Hendricks until after he was bitten. Thus, what appears to have occurred here is not a brutal, deliberate beating perpetrated by petitioner upon the person of Hendricks, but a single reflexive movement by which petitioner reacted to being bitten. While Hendricks may have been under effective restraint by that point, it is also evidence that he had not entirely ceased his resistance. In hindsight, it is clear that petitioner would have been better advised not to have employed his nightstick against Hendricks. However, confronted with Hendricks' provocative behavior, as well as the general tension inherent in the situation, petitioner struck out instinctively. Certainly, being a sergeant does not preclude a person from acting instinctively to pain. Under these circumstances, it cannot reasonably be found that petitioner used excessive force. Even if petitioner's conduct were deemed to be intemperate, the punishment of dismissal for one minor infraction after an unblemished seven-year employment history is disproportionate to the nature of the offense. (See *Matter of Pell v Board of Educ.*, 34 NY2d 222.) A period of suspension for six months without pay would have been more appropriate.