■ In the Matter of JOAN ZACHER et al., as Executors of ARTHUR GODFREY, Deceased, Petitioners, v PHILIP R. MICHAEL, as Commissioner of Finance of the City of New York, Respondent. — Determination of respondent New York City Commissioner of Finance, dated March 17, 1982, assessing petitioner under the city's Unincorporated Business Income Tax Law (Administrative Code of the City of New York, § S46-2.0) in the principal amount of $87,744.69, plus interest (less a credit of $6,297.42 for personal income tax overpayment), is confirmed, without costs. The critical question in the case is whether the respondent's determination that petitioners' testator (hereinafter petitioner) was not an employee of CBS (and certain other companies) during the tax years was supported by substantial evidence. Although there is ample evidence that petitioner was an employee, there is sufficient in the record to meet the minimal test for judicial confirmation of the administrative determination that he was not, i.e., that the determination was supported by substantial evidence. The evidence supporting respondent's determination that petitioner was engaged in conducting an unincorporated business and was not an employee includes the following: Petitioner reported his income from these activities on his tax returns on schedule C, entitled "Profit or (Loss) from Business or Profession," referring to the business as operated under the name "Arthur Godfrey Productions"; on those forms he deducted business expenses of a type not usually incurred by an employee. He had two full-time business employees, one or two part-time business employees whom he paid out of his own pocket. He paid occupancy and commercial rent tax. His vacations were essentially unpaid for, as he was paid only for actual performances or pretaped

programs. While petitioner agreed, as would be normal for an employee, not to advertise on his television (non-CBS) programs products competitive with those on his CBS radio program, CBS agreed (in a provision quite unusual in dealing with an employee) that CBS (the employer) would not accept advertising for petitioner's CBS radio program for products competitive with those advertised on petitioner's television (non-CBS) programs, if petitioner notified CBS of the products. Petitioner contends that he is entitled to credit (and that respondent has so conceded) with respect to certain royalty payments received totaling $18,796, such payments constituting "passive income" not subject to the unincorporated business tax, citing *Matter of Merrick v Tully* (68 AD2d 289). The record is unclear as to whether there is such a concession and whether the determination under review has made appropriate allowance for that. If such a concession has been made and if the concession requires some change in the determination, the parties may move to resettle the order to provide for such change. Concur — Ross, J. P., Silverman, Lynch and Kassal, JJ.

Milonas, J., dissents in a memorandum as follows: In my opinion, the petition should be granted to the extent of vacating that part of the tax assessment relating to the income which Arthur Godfrey derived from CBS. Although the majority concede that there is ample evidence that petitioners' testator, Arthur Godfrey, was an employee of CBS, they believe that there is sufficient proof in the record to meet the minimal standard required for judicial confirmation of the administrative determination. However, in this instance, the administrative determination is based upon a series of factual inaccuracies. Respondent Commissioner of Finance of the City of New York presented Godfrey with an assessment of $87,744.69, together with accrued interest in the amount of $53,706.76 minus a personal income tax refund credit of $6,297.42, for a net liability of $135,154.03 under the Unincorporated Business Income Tax Law. (Administrative Code of the City of New York, § S46-2.0.) The taxpayer challenged the notice of deficiency, and, following a hearing in connection with the matter, the referee made certain findings, among which were the following erroneous conclusions: (1) Although a script was prepared by CBS writers, Godfrey never used it; (2) Godfrey accepted other professional engagements with various corporate entities because of a general concern for reviving the public's interest in radio; (3) Godfrey was not covered for disability benefits as were other CBS employees since he was considered "talent working under separate agreements with various talent unions"; (4) Godfrey was granted discretion by CBS as to outside engagements; (5) Godfrey had the freedom to arrange his own vacation schedules; (6) Godfrey's Federal and State income tax returns showed no income from salaries and wages; and (7) Godfrey failed to produce copies of his W-2 wage statements. The referee ended with the statement that it "is clear that Arthur Godfrey was selling his renown, his image and public draw in an arms-length carefully calculated arrangement with CBS as an independent contractor and nothing less." Subsequently, the Bureau of Hearings of the New York City Department of Finance issued a final determination, dated March 17, 1982, upholding the deficiency and updating the interest due. Arthur Godfrey then instituted the instant petition pursuant to CPLR article 78 on the ground that respondent's decision was arbitrary, unreasonable, capricious and unsupported by substantial evidence. Issue was joined on July 27, 1982, and in an order of the Supreme Court, New York County (Hilda G. Schwartz, J.), entered on August 11, 1982, this proceeding was transferred to the Appellate Division, First Department. An examination of the record reveals that pursuant to its contract with Godfrey, CBS regarded him as a "talent employee." Moreover, as the principal party to the agreement, CBS controlled most of the aspects of their relation-

ship. Godfrey was paid a salary of a fixed amount, as well as an incentive compensation based on the profitability of his radio show. Income taxes and Social Security were withheld from his pay. He received his remuneration through checks of the type used for CBS employees. Godfrey was covered by workers' compensation and would have been eligible in New York for disability benefits. CBS made pension and welfare payments to the various talent unions, including AFTRA, the union which Godfrey was required to join. Moreover, CBS retained the authority to discharge him at will. Godfrey, who worked 10 to 12 hours each day, was, with the exception of Saturday or Sunday, mandated to render his services during such time as CBS commanded. While he was actually entitled to 13 weeks' vacation per year, he never left for more than four weeks in any given year and had to obtain prior approval before taking any vacation. Even when CBS allowed him time off, it was necessary that Godfrey prerecord the commercials and show openings and closings to be aired during his absence. The company directed the working conditions under which Godfrey and other CBS employees produced his radio show. It owned the premises on which the program was rehearsed and from which it was aired. Godfrey needed CBS permission to broadcast outside of New York City. The specially equipped recording studio was supplied by CBS, which also furnished all of the production personnel involved with the show. CBS provided Godfrey with an office, as well as subsidiary space for clerical personnel. These offices, which were the only ones maintained by Godfrey and were located on CBS premises, were utilized by CBS officials at their own convenience to discuss with clients products which might be advertised on the program or to screen prospective performers. Godfrey never paid any rent for the use of any of these facilities. Artistic control over the content of the radio program was almost entirely maintained by CBS. Although Godfrey was permitted to ad-lib within the structure of his contract since CBS preferred an element of spontaneity in the broadcast, a daily written script was prepared by CBS writers. Further, this technique of departing from the script, perceived by CBS as a method of attracting commercial sponsors, was conducted strictly within CBS guidelines and was not allowed to violate any of the five specific restrictions imposed by CBS. Beginning in 1966, all of Godfrey's shows were prerecorded, and the company had the right to edit the programs, and it could, if it chose, do this even without informing him of the fact that major segments were being excised. CBS had complete ownership of Godfrey's work product and could dispose of it as the company deemed appropriate. Additionally, CBS exercised prior restraint over the programs in that an individual charged with "standards and practices" (a censor) reviewed the contents of the shows before they were broadcast. Indeed, examination of the material started even prior to production when Godfrey had to meet with a CBS staff director. CBS dictated Godfrey's professional activities beyond merely his radio show. It possessed the power of exclusivity over his services and could prohibit him from appearing on any other radio or television programs. While Godfrey occasionally received the express consent of a senior CBS executive to make brief appearances elsewhere, all of these engagements were strictly an effort to engender more public interest in his CBS radio show and not because of any particular concern by him to revive interest in the radio medium. Moreover, CBS' control over Godfrey's activities extended even into his outside broadcasts in connection with which CBS selected the location, dispatched a producer to oversee the logistical arrangements and limited the time and duration of his appearances and the content of his script. As for Godfrey's tax returns, Wayne J. Danson, a certified public accountant and tax manager for Price Waterhouse & Company, testified that, when preparing the former's tax returns, he treated him as an employee of CBS and merely employed form schedule C as a tool of

convenience. Certainly, all W-2 and employee wage and tax statements were annexed to Godfrey's income tax returns, and these forms were produced at the hearing. In view of the overwhelming array of evidence that Godfrey was an employee of CBS and the almost complete lack of proof to the contrary, an administrative finding containing numerous factual errors can scarcely be confirmed simply because of such factors as the taxpayer's accountant electing to use schedule C and that Godfrey could afford to retain several personal employees. It is well settled that an administrative determination will not be overturned where there is conflicting evidence or evidence which could support a contrary conclusion (*Matter of Villa Maria Inst. of Music [Ross]*, 54 NY2d 691). An administrative decision supported by substantial evidence has a rational basis and will be upheld by the courts. (*Matter of Pell v Board of Educ.*, 34 NY2d 222.) Substantial evidence is defined as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180). In that regard, the burden of proof to overcome a tax assessment rests with the taxpayer. (*Matter of Liberman v Gallman*, 41 NY2d 774; *Matter of Grace v New York State Tax Comm.*, 37 NY2d 193.) However, a "court reviewing the substantiality of the evidence upon which an administrative agency has acted exercises a genuine judicial function and does not confirm a determination simply because it was made by such an agency" (*300 Gramatan Ave. Assoc. v State Div. of Human Rights, supra,* at p 181). Ascertaining whether "an employment relationship exists necessarily is a question of fact, involving a determination of 'the existence of a right of control over the agent in respect of the manner in which his work is to be done' * * * All aspects of the arrangement must be examined to determine whether the degree of control and direction reserved to the employer establishes an employment relationship" (*Matter of Villa Maria Inst. of Music [Ross], supra,* at p 692; see, also, *Matter of Liberman v Gallman, supra*). According to the regulations promulgated under the Unincorporated Business Income Tax Law, there are characteristic features of an employee-employer relationship. They are: (1) Whether the employee is required to work during stated days and hours; (2) Whether the employee is subject to company established production standards; (3) Whether the employer has the right to discharge the employee; (4) Whether the employee is provided with equipment and/or furnished a place to work; (5) Whether the employee is directed as to the "means and methods" of accomplishing the final result; (6) Whether, in the case of an employee working for more than one principal, a clear division of time has been established; (7) Whether the employee makes an investment of capital which is a material income-producing factor or maintains an inventory; (8) Whether the employee maintains his own office, engages his own assistants or hires his own employees or incurs expenses without reimbursement; (9) Whether personal income taxes or Federal insurance contributions are deducted from the employee's compensation; (10) Whether the employer pays unemployment insurance; (11) Whether the employee is a member of an employee pension plan or a member of an employee association or union. By any measure, Godfrey satisfies all of these criteria. The proof for the contrary proposition — that the taxpayer here was an independent contractor — is, on the other hand, exceedingly tenuous. In fact, the majority appears to have departed from the "substantial evidence" and "rational basis" standard in order to embrace a new rule — that an administration determination will not be disturbed so long as there is *any* proof, no matter how slight, to support that determination. This rule would be applied even where, as in the instant situation, it is undisputed that the referee has made numerous factually inaccurate findings. While administrative agencies do indeed have broad latitude with respect to their decisions, that

does not mean that their discretion is thereby entirely unfettered. In my view, the determination by the Department of Finance as to Godfrey's CBS income was not founded upon substantial evidence and, therefore, was lacking in rational basis.