Alexander, J.
(concurring). I believe the court’s holding today is an unwarranted extension of its prior holdings regarding the liability of an employer for the discriminatory acts of an employee. Nevertheless, I am constrained, in the face of those prior holdings and the absence of a legislative response thereto, to concur in the result reached. I urge the court however, to reexamine the rule enunciated in these holdings and today’s extension thereof. Additionally, I invite the Legislature’s attention to the fact that the rule severely limits the availability of the New York State Human Rights Law to the citizens of our State as a means of redressing discrimination, both in the work place and in places of public accommodation.
The court today reaffirms the rule previously enunciated in cases involving employment discrimination that an “employer cannot be found to have violated the statute [Executive Law § 296] solely because of an employee’s * * * discriminatory act; in order to hold the employer responsible the agency must demonstrate that the employer approved of, or acquiesced in, the employee’s conduct” (majority opn, at p 304). The majority now extends this rule to common carriers and places of public accommodations, resort or amusement identified in Executive Law § 296 (2), and holds that they similarly cannot be held liable for the discriminatory acts of a manager, superintendent, agent or *307 employee unless it is demonstrated that the owner, lessee or proprietor approved of or acquiesced in the discriminatory conduct of the manager, superintendent, agent or employee. Thus, the right of a victim of such discrimination to obtain redress, henceforth, for the indignation, harm and debasement resulting from the discriminatory conduct of an individual manager, superintendent, agent or employee effectively will be restricted to proceeding against the specific, identified actor, for rare will be the case where the victim will even know about the condonation of or acquiescence in such conduct by the owner, lessee or proprietor. There is nothing in the legislative history of this statute that warrants such a curtailment of the right of redress nor does the plain language of the statute require it.
It is the clear public policy of this State to combat discrimination in the work place and in places of public accommodation, resort or amusement, and to seek its eradication in all of its varied forms. To achieve that result, “the statute is to be ‘construed liberally for the accomplishment of the purposes thereof’ [Executive Law § 300]” (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 183).
While there may be some justification for requiring that there be employer “awareness of and acquiescence in discriminatory acts” by one employee against another in order for the employer to be answerable for such discrimination in the work place (but see, Horn v Duke Homes, 755 F2d 599 [7th Cir 1985]; Vinson v Taylor, 753 F2d 141 [DC Cir 1985]; see also, Note, Sexual Harassment Claims of Abusive Work Environment Under Title VII, 87 Harv L Rev 1449 [1984]), there is no justification for exempting a common carrier employer or the owner of a place of public accommodation, resort or amusement from responsibility for discriminatory acts visited upon the public by its employee simply because of the inability to establish employer awareness of or acquiescence in such discriminatory conduct.
We have not extended such an exemption in previous cases. In Hudson Tr. Lines v State Human Rights Appeal Bd. (47 NY2d 971) we affirmed the Commission’s determination holding the employer liable1 for the employee’s conscious discriminatory conduct even though the record “showed that the driver’s orders for the [complainants] to go to the end of the line were inconsistent with company policy and included a refusal to transport them at all” (Hudson Tr. Lines, supra, at p 973). Similarly, in 300 Gramatan Ave. Assoc. (45 NY2d 176, supra), we reinstated a Human Rights Appeal Board determination that the owner of the apartment building was guilty of unlawful discrimination *308 where it was clear that the “discriminatory acts” at issue were those of the superintendent and the managing agent. In Batavia Lodge No. 196, Loyal Order of Moose v New York State Div. of Human Rights (35 NY2d 143), we upheld a Division determination finding the Lodge guilty of unlawful discrimination based solely upon evidence of its bartender-employee’s action in denying service to the complainants.
The court’s ruling today that the subdivision dealing with public accommodations “expressly imposes liability only on the person who actually commits the discriminatory act” (majority opn, at p 305) is, in my view, a strained interpretation of the statute and clearly does not further the legislative purpose of eliminating discrimination in our State. On the contrary, it creates an enormous loophole in the statute and opens the door to circumvention of the statute by employers, owners, lessees and proprietors through the simple expedient of looking the other way.
The legislative intent and public policy would be better served by a rule that places the burden upon the employer to affirmatively demonstrate that all reasonable steps had been taken to insure against discriminatory conduct by its employees, failing which, its liability would be established.
Such a rule, whether based on a risk-allocation theory that the employer rather than the innocent victim of discrimination should be made to bear the costs of the discrimination by its employees as a required cost of doing business, since the employer is a more efficient cost avoider than the injured plaintiff, or upon a public policy determination that discrimination can best be eradicated by enforcing a strict liability rule that insures compensation for victims and creates an incentive for the employer to take the strongest possible affirmative measures to prevent the hiring and retention of employees who engage in discriminatory acts, would better serve the goal of eradicating discrimination in our State.
Judges Jasen, Simons and Kaye concur with Chief Judge Wachtler; Judge Alexander concurs in a separate opinion in which Judge Meyer concurs; Judge Titone taking no part.
Order reversed, with costs, petition granted and determinations of the State Division of Human Rights and the State Human Rights Appeals Board annulled.