◼ In the Matter of YOGENDRA D. SHARMA, Petitioner, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Respondents.—Determination confirmed and petition dismissed without costs. All concur except Callahan, J., who dissents and votes to annul the determination, in the following memorandum.

Callahan, J. (dissenting). I respectfully dissent. Upon judicial review of findings by an administrative agency, a determination is regarded as being supported by substantial evidence when the proof is " 'so substantial that from it an inference of the existence of the fact found may be drawn reasonably' " *(300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 179, quoting *Matter of Stork Rest. v Boland,* 282 NY 256, 273). Substantial evidence means such relevant proof

as a reasonable mind may accept as adequate to support a conclusion or ultimate fact *(300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra,* at 180). Whether an administrative agency determination is shored up by substantial evidence is a question of law to be decided by the courts which should not confirm a determination simply because it was made by such an agency *(300 Gramatan Ave. Assocs. v State Div. of Human Rights, supra,* at 181).

Upon my review of the record, I cannot agree with the majority that respondent's determination finding petitioner physician guilty of patient neglect with respect to the medical care and treatment he rendered to an elderly patient in a residential care facility is supported by substantial evidence. Specifically, respondent concluded that during the period between February 4, 1982 and March 16, 1982, petitioner "failed to properly address the gangrenous condition" of the patient's foot and "failed to provide adequate guidance for her treatment". Respondent's case rested upon the expert medical testimony from Dr. John Root, a staff physician employed by respondent Department of Health. Dr. Root never testified that petitioner's treatment was not in accordance with the general accepted standards of treating such a patient. Moreover, on cross-examination, he conceded that when gangrenous changes began in the toes, it is good practice to wait until the line of demarcation occurs so that the physician following the patient can know that there are going to be no further gangrenous changes before deciding to amputate. Petitioner testified that he pursued a conservative course of treatment of the patient's gangrenous condition because of her poor physical condition and his doubts that she would survive multiple surgical amputations. Petitioner's office advised the nursing home that should the patient's condition worsen, she should be sent to the hospital. An internist, who treated geriatric patients at nursing homes and who was himself a medical director at a nursing home, testified as an expert witness in petitioner's behalf that petitioner's care and treatment of the patient's gangrenous condition was "totally appropriate" and "consistent with the general routinely accepted standard of care for treating geriatric patients * * * in a nursing home." Thus, all the medical testimony in the record supports petitioner's decision to treat the patient's gangrenous condition of her foot conservatively. Therefore, there is no rational basis to support respondent's finding that petitioner's conduct so departed from that required to constitute patient neglect *(see, Matter of Chlebowski v Axelrod,* 90 AD2d 915). (Article 78

proceeding transferred by order of Supreme Court, Onondaga County, Stone, J.) Present—Dillon, P. J., Callahan, Green, Pine and Lawton, JJ.