■ In the Matter of NICHOLAS J. SERIO, Petitioner, v NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES et al., Respondents. [606 NYS2d 846] —Weiss, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Commissioner of Correctional Services which suspended petitioner from his employment.

In 1991 petitioner, the Acting Superintendent of Ogdensburg Correctional Facility in St. Lawrence County, requested an internal investigation by the Inspector General of respondent Department of Correctional Services when he suspected that a correction officer was tampering with inmate urine samples, causing them to test positive for drugs. Both initial and confirmatory follow-up tests ordered by that officer showed positive results under circumstances where logic suggested that drugs would not be involved. Further tests on the same inmates taken as part of petitioner's own investigation produced negative results.

Investigator James Bezio was sent from the Inspector General's Office and met with petitioner on December 13, 1991. At this meeting, which was the first and only meeting held, Bezio claims that petitioner refused to cooperate, causing Bezio to initiate the instant disciplinary charges. Bezio alleged that petitioner's demeanor and cooperation "changed 180 degrees" when petitioner learned that the investigative scenario included taking a urine sample from him.[1] It was uncontested that Bezio never directly ordered petitioner to submit a urine

---

1. It is unclear why Bezio was instructed by his superiors to procure samples from two high-ranking administrators within Ogdensburg Correctional Facility. Sufficient samples could have been produced from Bezio himself and petitioner while maintaining the confidentiality of this internal investigation. In Directive No. 2115 (Feb. 27, 1990), the Department of Correctional Services recognized that testing intrudes upon employees' reasonable expectations of privacy and provides specific procedural limits and protections concerning the testing of employees. Random testing is prohibited and ordered testing may occur only upon reasonable suspicion.

sample but rather sought his voluntary, personal participation, implying that it was necessary for the success of the investigation. It is further undisputed that at the initial meeting and subsequently, petitioner professed his willingness to submit a sample.

The lack of cooperation charge of which petitioner was found guilty was based upon petitioner's statements and demeanor, which Bezio interpreted as indicative of an effort to delay the investigation and thereby avoid giving a sample of his own urine. Bezio alleged that petitioner was evasive and procrastinated, offering puzzling reasons as to why he could not provide a sample of his own urine that day. Petitioner contends that he told Bezio that he thought the suspect was aware that petitioner had requested an investigation and that the correction officer had filed a grievance against him concerning the retesting. We find that the record herein fails to provide that quantum of proof necessary to support respondents' determination by substantial evidence (see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 181-182). The instant charge can be sustained only if Bezio's testimony substantiates petitioner's refusal to cooperate in the investigation.

It is clear that Bezio's investigation could not proceed on December 13, 1991 because a second urine sample from a high-ranking official could not be obtained on that day, and not because of petitioner's unwillingness to provide a sample of his own urine.[2] As the Administrative Law Judge noted, the manner in which the Inspector General's Office conducts an investigation is determined by that office, not by facility administrators, and all personnel within the Department are expected to cooperate fully in such investigations. The opinions, reservations and suggestions made by petitioner can only be classified as uncooperative if they were false, were intended to improperly effectuate a delay or were intended to interfere with the investigation. We find that the record fails to establish that the concerns and information given by petitioner were specious. It was up to Bezio to decide upon and direct the necessary investigatory steps and his departure from the

---

2. The only two individuals fitting the Assistant Inspector General's and Bezio's requirements were the Captain (Acting Deputy Superintendent of Security) and the Deputy Superintendent of Programs, the former being absent and the latter believed by petitioner to be on prescription medication. Bezio failed to consider using others, including himself, lower level officers, or individuals from Riverview Correctional Facility across the street from Ogdensburg Correctional Facility.

facility without a plan of action cannot be attributed to petitioner. Respondents' theory that petitioner attempted to deliberately hinder the investigation because his own urine was "dirty" was based solely upon Bezio's surmise and has no support in the record.[3] The record fails to establish petitioner's misconduct during the course of the December 13, 1991 meeting and therefore respondents' determination must be annulled.

Cardona, P. J., Mercure, Casey and Yesawich Jr., JJ., concur. Adjudged that the determination is annulled, with costs, and petition granted.

3. It was administratively determined within the instant proceeding that Bezio's observations and impressions were insufficient to meet the reasonable suspicion standard which would justify an ordered urine test.