■ In the Matter of 2589 WESTSIDE MARKET, LLC, Petitioner, v NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION, Respondent. [23 NYS3d 1]—

Determination of Environmental Control Board of the City of New York (ECB), dated August 29, 2013, which reversed the decision of an Administrative Law Judge (ALJ) dismissing a notice of violation (NOV) issued by respondent New York City Department of Environmental Protection (DEP) against petitioner for violation of Administrative Code of City of NY § 24-227 (b), unanimously annulled, without costs, and the petition brought pursuant to CPLR article 78 (transferred to this Court by order of Supreme Court, New York County [Cynthia S. Kern, J.], entered Apr. 25, 2014), granted.

DEP's inspector testified that he went to the complainant's 12th-floor apartment to take sound readings of the circulation devices at petitioner's ground floor supermarket. He used a DEP issued meter, which he calibrated both before and after he took the readings three feet from an open window in the complainant's apartment. The inspector's measurements indicated that the total sound reading (with petitioner's equipment on) was 56 dB(A), that the ambient sound reading (with petitioner's equipment off) was 50 dB(A), and that the "calculated" sound level from petitioner's equipment was 55 dB(A), which exceeded the maximum decibel level of 45 dB(A) allowed under section 24-227 (b) of the Noise Control Code (Administrative Code of City of NY § 24-201 *et seq.*). On cross-examination, the inspector acknowledged that there was no Lmax setting on his meter, that he did not record the sound levels with decimal points because the analog meter did not give decimal point readings, that he was not sure whether the air conditioning units in other apartments in the building were on or off, that he did not notice any construction noise, and that he did not account for wind.

Petitioner's acoustic consultant testified as to alleged inadequacies in the inspector's tests, including that Lmax "has to be measured with a meter that has the Lmax function." The consultant was present when the inspector performed his tests, but was not allowed into the complainant's apartment. Instead,

he took his own readings on a 14th-floor roof and from an open stairwell window on the twelfth floor, which showed sound levels with considerable variations, including an ambient sound level of 54 dB(A).

After the hearing, the ALJ granted petitioner's motion to dismiss the NOV, finding that DEP "failed to prove by a clear preponderance of the credible evidence[ ] that [petitioner] was in violation as charged." The ALJ found petitioner's evidence credible and that DEP did not counter it or offer any additional credible proof in support of the charge.

ECB reversed and imposed a penalty of $560. ECB found that DEP established by a preponderance of the credible evidence that the inspector's measurements accurately reflected that petitioner's circulation equipment produced "cumulative noise in excess of 45dB(A)," which shifted the burden of proof to petitioner, whose evidence did not refute the accuracy of the inspector's sound level measurements. In this regard, ECB found that the meter did not have to be equipped with Lmax and that petitioner's consultant's readings did not suffice to negate the inspector's readings because they were taken at a different location and time.

We now hold that ECB's determination is not supported by substantial evidence (*see generally 300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 180-181 [1978]).

DEP bore the burden of establishing that the alleged noise constituted a violation. Administrative Code § 24-217.1 requires that sound level measurements "be taken in Lmax with the sound level meter set to slow response," which establishes Lmax as the standard and uniform metric of sound level in determining noise violations.

The inspector's testimony did not establish compliance with the requirements of section 24-217.1. When asked if he took his measurements in "LMAX slow or did you not utilize LMAX?," the inspector responded: "I did all slow response." When asked "[b]ut did you use LMAX?," the inspector replied: "There was no LMAX [on that meter]." While Lmax is defined in section 24-203 (37) as "the maximum measured sound level at any instant in time," the inspector's testimony did not establish that his readings measured or that his results reflected the maximum measured sound level at the time they were taken.

Accordingly, on the record before us, the "quality and quantity" of the evidence is insufficient to warrant a finding that ECB's determination is supported by substantial evidence (*see Matter of 25-24 Café Concerto Ltd. v New York State Liq.*

*Auth.*, 65 AD3d 260, 265 [1st Dept 2009]). Concur—Friedman, J.P., Andrias, Saxe, Gische and Kapnick, JJ.