Matter of Wolff (Industrial Medicine Assoc., P.C.--Commissioner of Labor) (2022 NY Slip Op 06304)

Matter of Wolff (Industrial Medicine Assoc., P.C.--Commissioner of Labor)

2022 NY Slip Op 06304

Decided on November 10, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 10, 2022

533585
[*1]In the Matter of the Claim of Edward Wolff, Respondent. Industrial Medicine Associates, P.C., Appellant, Commissioner of Labor, Respondent.

Calendar Date:October 19, 2022

Before:Egan Jr., J.P., Clark, Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Harter Secrest & Emery LLP, Buffalo (Robert C. Weissflach of counsel), for appellant.
Catherine A. Barber, Guilderland, for Edward Wolff, respondent.
Letitia James, Attorney General, New York City (Marjorie S. Leff of counsel), for Commissioner of Labor, respondent.

Egan Jr., J.P.
Appeal from two decisions of the Unemployment Insurance Appeal Board, filed December 4, 2020, which ruled, among other things, that Industrial Medicine Associates, P.C. was liable for unemployment insurance contributions on remuneration paid to claimant and others similarly situated.
Industrial Medicine Associates, P.C. (hereinafter IMA) is a disability evaluation company that assesses individuals seeking disability benefits and provides that information to government entities. To provide these services, IMA recruits and retains the services of medical evaluators, some of whom IMA considers independent contractors and all of whom are licensed physicians. Claimant, a physician and board-certified internist, applied to IMA to work as a medical evaluator and subsequently entered into an independent contractor agreement with IMA to perform services as a medical evaluator from May 2017 to September 2017. Following the provision of his services, claimant applied for unemployment insurance benefits. The Department of Labor subsequently issued an initial determination finding that claimant was an employee of IMA and that IMA was liable for unemployment insurance contributions based upon remuneration paid to claimant and others similarly situated. IMA objected on the ground that claimant was an independent contractor. Following hearings, an Administrative Law Judge sustained the initial determination, and, upon administrative appeal, the Unemployment Insurance Appeal Board affirmed. IMA appeals.
We affirm. "Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor is determinative and the determination of the Board, if supported by substantial evidence on the record as a whole, is beyond further judicial review" (Matter of Eisenberg [CenseoHealth LLC-Commissioner of Labor], 205 AD3d 1185, 1185 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Brown [Plannernet, Inc.-Commissioner of Labor], 195 AD3d 1329, 1331 [3d Dept 2021]). "Substantial evidence is a minimal standard that demands only such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (Matter of Blomstrom [Katz-Commissioner of Labor], 200 AD3d 1232, 1233 [3d Dept 2021] [internal quotation marks and citations omitted]; see 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]). "Where, as here, the work of medical professionals is involved, the pertinent inquiry is whether the purported employer retained overall control over the work performed" (Matter of DeRoberts Plastic Surgery [Commissioner of Labor], 198 AD3d 1033, 1034 [3d Dept 2021] [internal quotation marks and citations omitted]; Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736-737 [1983]; see Matter of Lawlor [ExamOne World Wide Inc.-Commissioner of Labor], 130 AD3d 1345, 1346 [3d Dept 2015]). "Further, an organization which screens the services [*2]of professionals, pays them at a set rate and then offers their services to clients exercises sufficient control to create an employment relationship" (Matter of DeRoberts Plastic Surgery [Commissioner of Labor], 198 AD3d at 1034 [internal quotation marks and citations omitted]; accord Matter of Millennium Med. Care, P.C. [Commissioner of Labor], 175 AD3d 755, 757 [3d Dept 2019]; Matter of Kliman [Genesee Region Home Care Assn., Inc.-Commissioner of Labor], 141 AD3d 1049, 1050 [3d Dept 2016]).
The record demonstrates that IMA utilized a recruitment department that placed advertisements seeking physicians who would be interested in being retained by IMA as medical evaluators. IMA screened potential candidates by, among other things, checking or verifying licensure and interviewing the potential candidates by telephone or in person. Once retained, IMA scheduled the patients to be seen by claimant and set the office hours during which the evaluations would take place. IMA required claimant to meet with a mentor physician who would review with claimant the elements of the evaluation and report, as well as the requirements of the agency, and IMA's quality assurance department also ensured that claimant's reports conformed to any requirements imposed by the agency. To that end, all reports written by new medical evaluators were submitted to IMA's quality assurance department, and IMA could and would require claimant or any other medical evaluator to make corrections to the reports, which did not result in additional compensation. Although a medical evaluator could be taken off the quality assurance review process once they were deemed by IMA to be experienced enough, claimant was not taken off the quality assurance review process. Moreover, experienced medical evaluators were still randomly subject to having their reports reviewed by IMA's quality assurance department. Similarly, if any quality assurance issues arose during a case, claimant could contact his mentor to discuss the case. IMA required claimant to dictate all reports by the end of the day and, on the second day, review and sign all reports. If any complaints were lodged about claimant's services, IMA would handle those complaints.
IMA also provided training, the physical location/offices, a support staff, tools and certain supplies to claimant. With regard to training, claimant was trained on how to perform evaluations by the director of medical service and also received additional training. Claimant was required to notify IMA of any absences or days that he was not available, and, if claimant was absent from work, IMA assigned someone else to perform claimant's duties, as claimant was not permitted to find his own substitute. If a medical evaluator did not carry their own medical malpractice insurance — and claimant did not — IMA would cover that individual under its own blanket malpractice policy. Claimant would still be paid regardless of whether IMA received payment from a client for [*3]an evaluation conducted. Claimant was also prohibited from soliciting IMA's clients to be his own patients. Notwithstanding proof in the record that might support a contrary conclusion, we find that the foregoing constitutes substantial evidence to support the Board's decisions that IMA, while not directly supervising the evaluative services that claimant provided, retained sufficient overall control over the work performed by claimant and those similarly situated to establish an employer-employee relationship (see Matter of DeRoberts Plastic Surgery [Commissioner of Labor], 198 AD3d at 1035; Matter of Millennium Med. Care, P.C. [Commissioner of Labor], 175 AD3d at 757-758; Matter of Williams [Summit Health, Inc.-Commissioner of Labor], 146 AD3d 1210, 1210-1211 [3d Dept 2017]; Matter of O'Shea [Cayuga Emergency Physicians, LLP-Commissioner of Labor], 140 AD3d 1358, 1359 [3d Dept 2016]). To the extent that we have not addressed IMA's remaining contentions, they have been considered and found to be without merit.
Clark, Pritzker, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the decisions are affirmed, without costs.