■ In the Matter of RICHARD LEWIS, Petitioner, v NEW YORK CITY HOUSING AUTHORITY et al., Respondents.—In this CPLR article 78 proceeding to review a determination of respondent, New York City Housing Authority, which, after a hearing, adopted the findings of the Trial Officer and held petitioner guilty of violating certain rules and regulations of the New York City Housing Police Department (HPD), and imposed a penalty of five days' suspension, the petition is unanimously granted, and the findings of respondent annulled, without costs.

On the evening of Saturday August 17, 1985, petitioner, Richard Lewis, a highly decorated, 18-year veteran of the HPD and an ordained minister, was off duty and presiding over a church function at the Epiphany Church of God, located at 904 Myrtle Avenue in Brooklyn. Petitioner, who was assistant pastor of the church, was dressed in a suit and tie, and exhibited no indicia of his position as detective third grade with the HPD. At approximately 8:00 P.M. that evening, petitioner stepped outside, and was approached as he stood on the church steps by an elderly gentleman who, addressing petitioner by his first name, stated that he had something that

he wished to give to petitioner. Petitioner brought the man into the church and, upon speaking with him further, learned that the man would have to go home to get the item.

Within a few minutes of leaving, the man returned to the church carrying a tightly wound, opaque plastic bag, and was escorted by petitioner to a trustee's office inside of the church. There, petitioner opened the bag and discovered that it contained a .38 caliber gun. The man told petitioner that he had found the gun that morning and did not know what to do with it. Not wanting to leave a firearm on the church premises overnight, petitioner took the gun outside and, flagging down an HPD patrol car which was passing by the church, turned the weapon over to Officer Michael McCabe, who recognized petitioner as a fellow officer. Although petitioner told McCabe that he did not wish to divulge the name of the person who had given him the weapon, he requested that it be turned in at the police precinct, and understood that McCabe would voucher it in petitioner's name.

In a telephone investigation conducted by Sergeant Yvonne Mitchell of the New York City Police Department on August 22, 1985, petitioner maintained his position that he could not disclose the name of the individual who had given him the gun. Sergeant Mitchell, who testified that petitioner "might have told me [he was] a Minister and I might have already known he was a Minister", reported petitioner's refusal to provide the information. One day later, petitioner brought the elderly gentleman to Sergeant Mitchell's office to be interviewed.

By notice of charges served upon him on December 10, 1985, petitioner was accused of violating patrol guide procedures Nos. 110-14 and 110-15, 115-16, 115-7, and 105-1, in that, while off duty, he:

I. Failed to escort a civilian who surrendered a firearm to the HPD police service area or the 79th Precinct.

II. Failed to deliver said firearm to the desk officer at the 79th Precinct.

III. Failed to prepare a property clerk's invoice worksheet.

IV. Failed to call the stolen property inquiry section.

V. Gave said firearm to a member of the service without preparing a receipt.

VI. Failed to immediately cooperate with members of HPD and the New York City Police Department who were conducting an investigation of said firearm.

Petitioner pleaded not guilty to the charges and, in defense of

his actions, asserted the clergy privilege pursuant to CPLR 4505.

A hearing was held on May 20, 1987, at which petitioner provided the sole testimony, summarized above, regarding the circumstances under which the gun was surrendered to him. In addition to describing his strictly civilian dress on the night in question, the 200-person church function over which he was presiding, and the specific area within the church in which the elderly man had given petitioner his wrapped package, petitioner testified that he had previously informed the man that he was a minister. Petitioner further testified that he believed the man had approached him in that capacity.

In finding petitioner guilty of each of the charges except that designated as No. V, the Trial Officer held that there was "no evidence to support the [petitioner's] belief that the elderly gentleman surrendered the firearm to [petitioner] in his * * * capacity as a minister". The Trial Officer further held that the evidence was "clear and convincing" that petitioner had been approached "in his * * * capacity as a police officer".

Upon our examination of the record and, specifically, the undisputed testimony regarding the circumstances under which petitioner received the weapon, which is critical to a proper adjudication of charges Nos. I and VI, we conclude that the Trial Officer's findings are not supported by substantial evidence, and must be annulled. Substantial evidence is defined as "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact". (300 Gramatan Ave. Assocs. v State Div. of Human Rights, 45 NY2d 176, 180.) The record before us is not only devoid of any proof that the person who found the weapon came to petitioner in his capacity as a law enforcement agent, but, to the contrary, it in fact supports petitioner's position that the circumstances of the surrender provided " 'reason to believe that the information sought [from petitioner] required the disclosure of information * * * [which] was in [some] way confidential' ", and thus constituted a privileged communication to a clergyman. (Matter of Keenan v Gigante, 47 NY2d 160, 166, quoting Matter of Puglisi v Pignato, 26 AD2d 817; CPLR 4505.)

In this context, we find it highly significant that the individual went to a church with his carefully wrapped item, and not to a police precinct. In addition, we note that the Trial Officer's conclusions were in part based upon his erroneous

finding that petitioner accepted the firearm "on the steps of his church", a place open to public view.

With respect to the charges designated as Nos. II, III, and IV, which pertain to petitioner having turned the firearm in to the precinct via Officer McCabe, we note that various police witnesses testified that it is a common, and apparently acceptable, practice for a police officer who is neither the finder of property nor the arresting officer to voucher or process property in the name of another officer. Indeed, the Trial Officer observed that this "point was made by the cumulative testimony of [petitioner's] witnesses".

Finally, we note that it is unlikely that petitioner would lightly have subordinated his responsibilities as a police officer to those he bore as a minister, for the record clearly establishes that he had, in his 18-year service with HPD, proved his commitment to law enforcement work. Petitioner had been awarded the HPD Medal of Honor twice, had received 15 awards for meritorious police duty, 15 awards for excellent police duty, two unit citations, and personal letters of commendation from three prior chiefs of the HPD. In addition, petitioner had been the recipient of the Silver Star for Bravery from the American Police Hall of Fame, and had achieved the rank of detective third grade at the time of the events in question.

In light of all of the above, we hold that the findings of respondent are not supported by substantial evidence, and they are, accordingly, annulled, and the petition granted. Concur—Murphy, P. J., Kupferman, Carro, Kassal and Rubin, JJ.