■ In the Matter of CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS, on Complaint of PAMELA M. EASTON, Respondent.—In this CPLR article 78 proceeding transferred to this court by order of the Supreme Court, New York County (Herman Cahn, J.), entered on or about May 5, 1988, the order of the Commissioner of the State Division of Human Rights, dated January 19, 1988, which rejected the determination of the Administrative Law Judge and found that petitioner had discriminated against complainant on the basis of sex and race, and which directed, *inter alia,* that complainant be offered a supervisory position and awarded damages in the sum of $10,000 for mental anguish and humiliation, is unanimously annulled, the petition is granted, and the order vacated, without costs.

On August 12, 1983, complainant, Pamela Easton, an employee of the law department of petitioner, Consolidated Edison Company of New York, Inc., filed a complaint with the New York State Division of Human Rights (the Division), alleging that she had been "denied a transfer-promotion to a managerial position" because she is black and a woman. A public hearing pursuant to Executive Law § 297 was commenced on March 3, 1986 and continued on various dates thereafter until its conclusion on January 15, 1987. On September 15, 1987, Administrative Law Judge (ALJ) Rose Ferrandina issued recommended findings of fact, decision and order holding that the complainant had failed to prove the allegations of unlawful discrimination and dismissing the complaint.

By order dated January 19, 1988, the Commissioner rejected the ALJ's determination and held that petitioner had "dis-

criminated against Complainant on the basis of her sex and color, in violation of the Human Rights Law". Pursuant to this finding, petitioner was ordered, *inter alia,* to pay complainant the sum of $10,000 as damages for hurt, humiliation and mental anguish, and to offer her a supervisory position with back pay and seniority.

In the instant proceeding, petitioner seeks judicial review pursuant to Executive Law § 298. The standard to be applied in reviewing a challenged administrative determination is whether it is supported by substantial evidence on the record as a whole. *(300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 179-180.) Upon examination of the record, we conclude that the Commissioner's determination fails to meet this standard.

The facts are essentially undisputed. Complainant, Pamela Easton, has worked in the calendar section of petitioner's law department since 1975. Originally hired in the nonmanagerial position of clerk B, Ms. Easton received three promotions in approximately 2½ years, gradually attaining one of the highest union, i.e., nonmanagement, positions, senior office assistant B.

In February 1982, Easton commenced a six-month maternity leave and, during this period, the supervisor of the calendar section, Thomas McLaughlin, unexpectedly resigned. Several people within the department, including Easton, were considered for the position.

Effective June 1982, the position of assistant calendar supervisor was offered to Charles Gallagher, a white male who had been employed by petitioner since 1976 and assigned to the calendar section as a clerk B in 1978. Although trained or "broken in" by Easton, who was a clerk A when Gallagher first began working in the calendar section, Gallagher had, by the following year, also reached the level of clerk A. Gallagher's promotion to assistant calendar supervisor was granted with the understanding that his performance would be evaluated for six to eight months and, if he worked out well, he would be named calendar supervisor. In January 1983, Gallagher was promoted to the higher office.

Sometime thereafter, a decision was made to hire a second supervisor for the calendar section, and several of the law department's employees, including two women, Cynthia Perez and Lorraine O'Sullivan, were approached, but none expressed an interest in the position. Advertisements were then placed in newspapers and, when they produced no satisfactory candi-

dates, management again began to look within the law department. It was at this point that Easton and Daniel Mercado, a male hispanic, began to be considered for the position. Unlike Mercado, Easton had not first come to management to express an interest in the position.

After interviewing the two candidates and considering their relevant qualifications, Mercado was found to be the more qualified and, effective May 1, 1983, was named assistant calendar supervisor.

Although Easton did not receive the promotions in question, the record is devoid of support for the Commissioner's conclusion that she was passed over "for reasons related to [her] sex and color". Rather, the testimony of several management officials established that the successful candidates were in fact better qualified and possessed traits which merited additional recognition.

Thus, for example, both Gallagher and Mercado were college graduates while Easton was a high school graduate who had completed one semester of college. In addition, Gallagher and Mercado were experienced in the operation of computer terminals, a useful skill in the calendar section, which had begun to computerize its records as of late 1982. The evidence further established that Mercado had been a supervisor for approximately six years before being employed by petitioner, while Easton had no supervisory experience whatsoever.

Included in the testimony of the various supervisors and other management officials were other considerations, such as those relating to work habits and attitudes. Mercado was described as being dedicated, "giv[ing] 100%", and putting in long days, which often included taking no more than half an hour for lunch. Similarly, Gallagher had demonstrated to his supervisors a "real eagerness to get the job done" and "was not a clock watcher * * * would stay late, [and was] very industrious". In contrast, Easton, who was considered a good employee, did not exhibit the degree of motivation found in the other candidates. For example, while Mercado and Gallagher would complete assignments and exercise initiative to find out what more needed to be done, Easton would finish a task and simply await the assignment of another.

Thus, the record contains "legitimate, independent and nondiscriminatory reasons to support [petitioner's] decision", which suffice to rebut a prima facie case of discrimination. *(Matter of Miller Brewing Co. v State Div. of Human Rights,* 66 NY2d 937, 938-939.) Moreover, this record simply does not

contain any evidence that the selection of Mercado and Gallagher over complainant was in any way motivated by considerations either of race or sex. Indeed, with respect to the claims of sex discrimination, we note that two women were first offered the position ultimately accepted by Mercado. In the absence of any such proof, it was improper for the Division to substitute its judgment for that of the petitioner employer. *(See, Matter of New York Tel. Co. v Wethers,* 36 AD2d 541, *affd* 30 NY2d 791.)

In light of this determination, we need not reach the remaining issues raised on appeal. Concur—Ross, Asch and Kassal, JJ. Smith, J., dissents in a memorandum and Kupferman, J. P., concurs in the dissent in a separate memorandum, all as follows:

Smith, J. (dissenting). Because I believe there was substantial evidence to support the determination of the New York State Division of Human Rights (the Division) that petitioner Con Edison discriminated against complainant on the basis of sex and race, I would confirm the order and dismiss the petition.

The issue here is not whether the complainant was more qualified than a person promoted to a supervisory position in the Calendar Unit in May 1983. It is whether over the period of her employment, which began in 1975, plaintiff was denied the opportunity for promotion and denied promotion because of her race and sex.

Although she was the most senior clerical staff member in the calendar section of Con Edison's law department, complainant Pamela Easton, a black female, was never given more than perfunctory consideration for management-level positions within the section, while white male employees with less experience were considered and promoted. Complainant was continuously employed in the calendar section since 1975. Con Edison has a policy of promoting from within. In June of 1982 a white male who joined the section in 1978 and was trained by complainant was promoted to a management-level position in the section and further promoted in January 1983. In May of 1983 a white hispanic male who was not employed in the calendar section was promoted above complainant to a management position within the section.

By complaint filed with the Division on August 12, 1983, Pamela Easton alleged that she had been "continually denied a transfer-promotion to a managerial position", that nonblack and nonfemale co-workers with credentials equal to or less

than hers "were given preferential treatment in that they were transferred-promoted into positions which * * * enhanced their development and career advancement" and that the "most recent" improper employment practice occurred on or about May 17, 1983.

Following a fact-finding hearing the Division, by decision and order dated January 19, 1988, determined that, in violation of the Human Rights Law (Executive Law art 15), Con Edison had discriminated against Ms. Easton on the basis of her sex and color and ordered, *inter alia,* that Con Edison offer to Ms. Easton a supervisory position similar to that denied to her, with back pay and benefits, and that petitioner pay to Ms. Easton damages for humiliation and mental anguish in the amount of $10,000.

In this proceeding, pursuant to Executive Law § 298, Con Edison appeals from said decision and order of the Division.

Our review of the determination of an administrative agency after hearing is limited solely to whether that determination is supported by substantial evidence. *(300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 179-180 [1978].) In considering whether substantial evidence supports a determination of the Division of Human Rights this court should be guided by several precepts. One is that discrimination is generally accomplished by subtle rather than overt means and that inferences and conclusions must of necessity be drawn from the evidence presented *(see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d, *supra,* at 183). A second is that the Division, the agency charged with enforcement of the Human Rights Law and the trier of fact herein, is in the best position to draw appropriate inferences from the evidence presented. *(Matter of Holland v Edwards,* 307 NY 38, 44-45 [1954].)

It is undisputed that complainant was employed continuously since 1975 in the calendar section of petitioner's law department and that she was regarded as a valued employee, receiving the first of several clerical promotions in 1980. It is also undisputed that she was responsible for training or "broke in" Charles Gallagher, a white male who joined the calendar section in 1978. One year later in 1979 Gallagher was promoted to clerk A, the same position then held by complainant. Gallagher subsequently transferred to an investigative unit in the law department.

There is evidence in the record that in February 1981 when Ed Hulett, the chief calendar supervisor of the unit, com-

menced a leave of absence, complainant, as the most senior clerk, assisted Thomas McLaughlin, the assistant calendar supervisor, in preparing reports and with other supervisory responsibilities. Hulett subsequently resigned.

Complainant began a maternity leave of absence in February 1982. In the early summer of 1982 she received a telephone call from John Moran, manager of the law department's claim bureau, asking that she cut short her leave as she was needed due to a personnel shortage in the calendar section. As a result complainant returned to work in August of 1982. Thereupon she learned for the first time that Thomas McLaughlin had resigned as assistant calendar supervisor in March 1982 and that Gallagher had been promoted to that management level position in June of 1982. Gallagher, who had no prior supervisory experience, was reassigned to the calendar section following McLaughlins' resignation. Hulett, McLaughlin and Gallagher are all white males. Complainant was never informed of the availability of the position or given an opportunity to apply for it. In January 1983 Gallagher was promoted to chief calendar supervisor. Again complainant was not advised of this opening or considered for same.

The assignment of filing dates, the assignment of attorneys to argue motions, and maintenance of the law department's trial book—a log of all court appearances and return dates—were all handled by McLaughlin in his capacity as assistant calendar supervisor. However after Gallagher assumed that position, the first two duties were transferred to the assistant general counsel. A separate log book for motions was created and Easton was assigned to maintain it.

When petitioner began seeking applicants to fill the position of assistant calendar supervisor, left vacant by Gallagher's promotion, it approached several white males and two white female employees outside of the calendar section. None of these people expressed an interest in the position. Petitioner approached the complainant only after a newspaper advertisement failed to produce a likely candidate. Daniel Mercado, a white hispanic male, then working as an investigator, was eventually appointed to the position in May 1983 and complainant received yet another clerical promotion.

Mercado, who had joined Con Edison in 1980, working parttime as a customer service representative, previously had been rejected for several clerical and investigator positions within the company and was employed as an investigator in the law department at the time of his appointment.

During the 10 years in which complainant was employed in the calendar section she was the only black and only female employee.

Based upon this record the Division concluded:

"The practice of promoting white males in available supervision positions in the Calendar Unit has been clearly established. Indeed respondent's method of approaching certain employees and not others, despite whatever qualifications they possessed, appears to be standard operating procedure which has, and continues to have an adverse impact on complainant.

"The procedure for advertising and recruitment of personnel in open listings available to all employees in the department is not well established in the record. Neither are the qualifications and procedures for interviewing applicants consistently applied so that predictable results can be expected that are free from subjective and/or illegal manipulations."

Easton clearly had more experience in the unit than either of the male whites promoted over her to management positions. A management assessment of her, conducted by petitioner in 1983, indicated that she had above-average abilities for undertaking first-level management responsibilities. Moreover, unlike the two men who were promoted above her, she had had actual experience with the supervision and training of new clerical employees and law student interns in the unit. While Easton had a high school diploma and only one semester of college courses, a college degree was not a requirement of either management-level position.

Accordingly, it cannot be said upon this record that the Division's conclusion that Easton had been the victim of race and sex discrimination is not supported by substantial evidence. Moreover, it is well settled that while a reviewing court may have reached a contrary conclusion had it been the trier of fact, it may not substitute its judgment for that of the administrative agency. *(300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d, *supra,* at 179-180.)

The charge concerning the 1982 promotion of Gallagher was timely made. (Executive Law § 297 [5]; 9 NYCRR 465.3 [e]; *Matter of Russell Sage Coll. v State Div. of Human Rights,* 45 AD2d 153 [3d Dept 1974], *affd* 36 NY2d 985 [1975]; *see also, Matter of Trans World Airlines v State Human Rights Appeal Bd.,* 113 AD2d 889, 890 [2d Dept 1985] [the period of limitation begins to run on the date complainant learned of the discriminatory act].)

The Division's order that Con Edison notify its managers

that race and sex discrimination in employment is illegal, that it offer Easton the promotion it unlawfully denied to her, that it pay her as back pay the differential between her actual earnings and what she would have earned as well as damages for humiliation and mental anguish was authorized by statute and appropriate. (Executive Law § 297 [4] [c].)

Kupferman, J. P. (concurring in dissent). The determination of the New York State Division of Human Rights was " 'supported by substantial evidence on the whole record' " and, accordingly, we may not substitute our judgment to the contrary. *(300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 179.)