■ In the Matter of the Claim of KATHRYN L. BAKER, Respondent. P.I.M.M.S. CORPORATION, Appellant; JOHN F. HUDACS, as Commissioner of Labor, Respondent. [617 NYS2d 976] — Mikoll, J. P. Appeal from two decisions of the Unemployment Insurance Appeal Board, filed March 12, 1993, which ruled that P.I.M.M.S. Corporation was liable for unemployment insurance contributions on remuneration paid to claimant and those similarly situated.

P.I.M.M.S. Corporation (hereinafter PIMMS), a Minnesota corporation, is in the business of national retail service merchandising. It receives requests from manufacturers to service their products by hiring people to take inventories, to repackage material and to arrange displays thereof in various retail establishments which sell the manufacturers' products. PIMMS hires merchandisers to do the work and acts as a conduit between its customers-manufacturers and its network of approximately 300 merchandisers. Claimant became associated with PIMMS by calling and offering her services as a merchandiser. She signed an agreement in which she was denominated an independent contractor. Claimant is a trained merchandiser having worked for organizations similar to PIMMS. PIMMS provided no training to claimant and claimant continued to work for PIMMS' competitors during all relevant periods of time. The terms of the contract included an hourly wage of $8 although, in fact, PIMMS and claimant negotiated four different payment terms and also a flat rate

for jobs and remuneration for mileage on two occasions. PIMMS reserved the right to reject all job performances which fell below its quality standards.

PIMMS would forward to claimant "how to" lists prepared by PIMMS' customers, which indicated how the job was to be done and all the time requirements of the manufacturer. Claimant would then appear at the designated store location and, upon completion of the assignment, have her work confirmed by having the store's representative sign a "satisfaction report". This was sent on to PIMMS and was the basis on which claimant was paid and the manufacturer billed for the job done by PIMMS. PIMMS has seven employees, six of whom are located in Minnesota and one of whom is located in Boston. The latter's assignment is to find new customers for PIMMS by soliciting business from account managers. There are no supervisors in New York which represent PIMMS.

Claimant received instructions from PIMMS as to the job assignment and its location, and that she was to sign in on a vendor log upon arrival at a store and introduce herself as a representative of PIMMS to the manager. Claimant could refuse any proffered assignment and could substitute people to do the job for her without notice to PIMMS. Claimant could also represent competing businesses. Complaints against claimant were handled by the retailer where the work was done. The merchandising service lasted only one or two hours. Claimant worked for PIMMS a total of 55½ hours in 1991 and 1992 combined.

Claimant was originally found to be an employee of PIMMS and, therefore, entitled to unemployment insurance benefits. This determination was overruled by the Administrative Law Judge, who found that claimant was an independent contractor. On appeal, the Unemployment Insurance Appeal Board (hereinafter Board) reversed and held that claimant was an employee of PIMMS. The Board found the following facts to be significant of an employer-employee relationship: (1) PIMMS alone obtained servicing contracts, (2) PIMMS gave claimant and other merchandisers specific instructions and forms in connection with the rendition of their services, (3) claimant was paid by corporate check at a rate set in the agreement which was modified several times, (4) claimant was expected to call PIMMS' representative if she had problems or questions dealing with her job, (5) the contract had a confidentiality clause prohibiting claimant from disclosing customers names as to any third party, and (6) the requirement of meeting the PIMMS quality standards. The question before

this Court is whether the Board's decision finding an employer-employee relationship is supported by substantial evidence. We find that the Board's decision is not supported by substantial evidence.

Substantial evidence is "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" *(300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 180). To determine this question, the findings of the Board must be considered. An employer-employee relationship exists when control over the means is exercised by the purported employer over the purported employee *(see, e.g., Matter of Field Delivery Serv. [Roberts],* 66 NY2d 516, 521). "Although a determination that an employer-employee relationship exists may rest upon evidence that the employer exercises either control over the results produced or over the means used to achieve the results * * * control over the means is the more important factor to be considered" *(Matter of Ted Is Back Corp. [Roberts],* 64 NY2d 725, 726).

The fact that PIMMS alone obtained servicing contracts does not imply the existence of an employer-employee relationship, but rather illustrates PIMMS' function as an intermediary between the manufacturer-customers and the merchandisers *(see, Matter of Pavan [UTOG 2-Way Radio Assn.— Hartnett],* 173 AD2d 1036, 1038, *lv denied* 78 NY2d 857). As the record reflects, the nature of current national retail businesses dictates the use of merchandisers such as claimant. The casual and irregular nature of services called for from merchandisers makes agencies such as PIMMS necessary to meet manufacturers' need for control over their inventories and to check on the proper showcasing of the their retail lines. Rather than have manufacturers undertake the onerous task of seeking out part-time help to meet their needs, PIMMS fills the void.

The second basis of the Board's decision was that PIMMS gave claimant specific instructions on how to do the work and supplied her with forms to fill out on completion of a job. As to the specific instructions or "how to" sheets provided to claimant, the record discloses that these came from the manufacturer and not PIMMS. Further, the instructions were not unlike instructions given to an independent contractor in order to get the job done. The instructions identified the job to be done, the time period, but the details were worked out between claimant and individual store managers where the manufacturers' wares were being sold.

As to the forms to be filled out on completion of a job, these were necessary for recordkeeping purposes for PIMMS' payroll needs and as a basis on which PIMMS charged the manufacturer for the service rendered by its merchandisers. Such forms are neutral as to any implication of a specific relationship between claimant and PIMMS *(see, Matter of Fusaro Reps [Roberts],* 125 AD2d 870, 872). The forms are a necessary tool in the business relationship between the manufacturer, PIMMS and the merchandiser.

The third basis relied on by the Board is payment of claimant by PIMMS' corporate check at a rate set out in the agreement. The payment of claimant by corporate check, as set out in their agreement, is a neutral action. Since PIMMS' business required that they provide their customers with merchandisers, it follows that PIMMS is the logical business entity to pay the merchandisers that they engage. Mere payment does not indicate control over the merchandisers. The record shows also that claimant retained a right to renegotiate the hourly flat rate of $8 set out in the contract and on several occasions did in fact do so, including compensation for mileage. If anything, this variable rate is antithetical to an employer-employee relationship in that claimant retains control over her remuneration.

The Board also found control evidenced by a requirement that claimant was to call a PIMMS representative with questions or problems dealing with the job. We note that the instructions issued to claimant are in optional form, namely, "if you have any questions, please feel free to call". What is of greater consequence than this offer of help, in the totality of the circumstances of claimant's employment, is that the record is barren of any evidence that merchandisers called PIMMS for clarification as to how to get the job done. PIMMS' personnel were not on the job site and could not be helpful. Rather, the record discloses that the hands-on direction came from the retailer's representative to whom the merchandiser was sent to do his or her job.

The fact that the contract contained a confidentiality clause as to nondisclosure of PIMMS' customer list and established a standard for claimant to "meet with the satisfaction of PIMMS and its quality standards" is also not helpful in pinpointing the relationship as one of employer and employee. Claimant was not restricted in her right to compete or to use the information gained from working with PIMMS. Claimant was in fact employed by PIMMS' competitors without objection from PIMMS. As to the standard of performance, it is

very general in nature and not unlike a standard that an independent contractor would have to meet. This is a reasonable requirement made by the hiring party whether it be with an employee or an independent contractor. Of special note is the evidence in the record that the standard of performance imposed on claimant was imposed by PIMMS' customer, which was the only entity in a position to judge and demand a given level of performance and/or the retail store manager who approved the "sign off" sheet.

As a further element of the relationship, the Board found that claimant and other merchandisers are an integral part of PIMMS' business. We find that this finding is also of neutral implication and does not lend support to the determination that an employer-employee relationship exists.

The Board also concluded that the employer-employee relationship is indicated by the fact that claimant did not hold herself out as being in the business of providing merchandising services. Such conclusion is totally at odds with the evidence. Claimant did not testify and the record is totally barren of any evidence that claimant did not advertise her services or did not hold herself out as being a merchandiser. A representative of PIMMS testified as to industry-wide practices, that is, that most merchandisers advertise or obtain work by networking with other merchandisers from whom they learn of available work projects. She testified that claimant contacted PIMMS and offered herself out as a merchandiser. Evidence also discloses that she worked for competitors of PIMMS which seems to indicate that she was, in fact, in the business of being a merchandiser.

In holding that claimant was an independent contractor and not an employee of PIMMS, we find the following established facts dispositive: PIMMS has no supervisors in New York to control merchandisers it engages; PIMMS provided no training for merchandisers; claimant was unrestricted as to whom she worked for including PIMMS' competitors; claimant was free to decline or accept job offers; she was free to hire substitutes without advising PIMMS; claimant provided any tools or supplies necessary to perform the job; she was paid no fringe benefits by PIMMS; the services were provided at retail locations and not any PIMMS locations; it was the manufacturer who supplied claimant with "how to" lists; and claimant was responsible for all taxes and insurance required by independent contractors.

Crew III, White and Peters, JJ., concur.

Yesawich Jr., J. (dissenting). I respectfully dissent and vote to affirm for the reasons stated in the Board's decisions. Ordered that the decisions are reversed, on the law, without costs, and matter remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court's decision.