Rose, J.
Appeals from two decisions of the Unemployment Insurance Appeal Board, filed July 29, 2005, which ruled that Stiefvater Real Estate, Inc. was liable for additional unemployment insurance contributions based on remuneration paid to claimant and those similarly situated.
Claimant worked for Stiefvater Real Estate, Inc., initially as a licensed real estate sales agent and later as an office manager. While no written agreement described claimant’s relationship with Stiefvater when she became office manager, her primary role was to assist the firm’s other sales agents with their required regulatory paperwork upon their request and, if she *1177 assisted with the paperwork for a transaction which then closed, she would receive a commission paid half by Stiefvater and half by the agent. Stiefvater eventually terminated claimant and she filed a claim for unemployment insurance benefits. Following a hearing on her eligibility for such benefits, the Administrative Law Judge found that claimant was an independent contractor and denied her claim. Upon appeal, the Unemployment Insurance Appeal Board reversed, finding that Stiefvater exercised sufficient supervision, direction and control over claimant’s work to establish her status as an employee. These appeals by Stiefvater ensued.
Initially, we find no merit in Stiefvater’s contention that the Board erred in substituting its judgment for the credibility determinations of the Administrative Law Judge. Although considerable weight is accorded to such determinations, the Board is not bound by them and may make its own assessments (see Matter of Simpson [Commissioner of Labor], 301 AD2d 1005 [2003]; Matter of Cooney [Consolidated Edison Co. of N.Y.— Commissioner of Labor], 283 AD2d 820, 821 [2001]).
We do, however, agree with Stiefvater that the Board’s determination is not supported by substantial evidence. While we are certainly mindful that the existence of an employer-employee relationship is a factual question for the Board to resolve after weighing the conflicting evidence and the inferences that may be drawn therefrom (see Matter of Lambert [Staubach Retail Servs. New England, LLC—Commissioner of Labor], 18 AD3d 1049, 1050 [2005]; see also Matter of Gibson v Carrier Corp., 307 AD2d 616, 618 [2003]; Matter of Drakes v Bank Julius Baer & Co., 301 AD2d 799, 800 [2003]), there must be “proof within the whole record of such quality and quantity as to generate conviction in and persuade a fair and detached factfinder that, from that proof as a premise, a conclusion or ultimate fact may be extracted reasonably—probatively and logically” (300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 181 [1978]). None of the Board’s relevant factual findings meets this standard.
As to the Board’s finding that claimant was required to work a set schedule, it is true that claimant testified that she worked from 9:00 a.m. to 5:00 p.m. Monday through Friday—the firm’s normal business hours—because she thought that was expected. However, neither she nor anyone else testified that she had been told or required to work those hours and there is ample evidence, including an office policy manual, reflecting that she could work when she pleased and would not be available every day during those hours. Similarly, as to the Board’s finding that *1178 claimant had to give prior notification if she was going to be absent, the record contains claimant’s own testimony that she could take time off whenever she wanted as long as she told Stiefvater she was doing so. There is no evidence that claimant had to obtain permission before taking time off.
Similarly unfounded is the Board’s finding that Stiefvater’s president “acknowledged that he would evaluate the claimant’s overall work performance and review his findings with her, indicating that the claimant was held to certain performance standards and suggesting more than incidental control over her work product.” The only evidence regarding performance review is the president’s description of one incident: “In one of the reviews with [claimant] I stated to her that there were to [sic] many office clicks [sic]. That people were getting preferential treatment from hqr and I didn’t appreciate it.” As this statement relates solely to claimant’s failure to offer her services equally to all sales agents, it provides no proof that Stiefvater set performance standards or in any way controlled the results of claimant’s work or the means utilized to achieve those results (see Matter of Lambert [Staubach Retail Servs. New England, LLC—Commissioner of Labor], supra at 1050).
In addition, claimant testified that, throughout her time with Stiefvater, she had always considered herself to be an independent contractor and not an employee, and she was paid solely on a commission basis by checks that combined her commissions from assisting sales agents and from her own sales. She further acknowledged that Stiefvater had not required her to maintain time sheets or submit any account of her work in order to be paid, and that she reported all her income on schedule C of her tax returns, paid the self-employment taxes and took business-related deductions. In sum, there is no evidence in this record sufficient to support the finding that claimant was an employee of Stiefvater (see Matter of Baker [P.I.M.M.S. Corp.—Hudacs], 209 AD2d 751, 753-755 [1994]; Matter of Fusaro Reps [Roberts], 125 AD2d 870, 871-873 [1986]). In view of our ruling, we need not address Stiefvater’s contentions regarding the applicability of Labor Law § 511 (19).
Cardona, P.J., Mugglin and Lahtinen, JJ., concur. Ordered that the decisions are reversed, without costs, and matters remitted to the Unemployment Insurance Appeal Board for further proceedings not inconsistent with this Court’s decision.