Matter of Mota Reyes (American Paraprofessional Sys. of NYC, Inc.--Commissioner of Labor) (2022 NY Slip Op 06303)

Matter of Mota Reyes (American Paraprofessional Sys. of NYC, Inc.--Commissioner of Labor)

2022 NY Slip Op 06303

Decided on November 10, 2022

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 10, 2022

532995 532997 532999
[*1]In the Matter of the Claim of Andris Y. Mota Reyes, Respondent. American Paraprofessional Systems of NYC, Inc., Appellant. Commissioner of Labor, Respondent. (Claim No. 1.)
In the Matter of the Claim of Maureen O'Mara, Respondent. American Paraprofessional Systems of NYC, Inc., Appellant. Commissioner of Labor, Respondent. (Claim No. 2.) (And Another Related Proceeding.)

Calendar Date:October 18, 2022

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Ceresia and McShan, JJ.

Nixon Peabody LLP, Jericho (Tara E. Daub of counsel), for appellant.
David E. Woodin, Catskill, for Andris Y. Mota Reyes and another, respondents.
Letitia James, Attorney General, New York City (Linda D. Joseph of counsel), for Workers' Compensation Board, respondent.

Lynch, J.
Appeals (1) from two decisions of the Unemployment Insurance Appeal Board, filed January 15, 2021, which ruled, among other things, that American Paraprofessional Systems of NYC, Inc. is liable for unemployment insurance contributions on remuneration paid to claimant Andris Y. Mota Reyes and others similarly situated, (2) from two decisions of said Board, filed January 15, 2021, which ruled, among other things, that American Paraprofessional Systems of NYC, Inc. is liable for unemployment insurance contributions on remuneration paid to claimant Maureen O'Mara and others similarly situated, and (3) from a decision of said Board, filed January 15, 2021, which assessed American Paraprofessional Systems of NYC, Inc. for additional unemployment insurance contributions.
American Paraprofessional Systems of NYC, Inc. (hereinafter APP) is engaged in the business of providing medical information and laboratory results to approximately 400 insurance companies to assist them in underwriting various types of life insurance. To provide these services, APP recruited and maintained a database of mobile paramedical examiners (hereinafter examiners),[FN1] who APP arranged to conduct examinations of life insurance applicants at each applicant's home or office. Following an audit of APP, the Department of Labor issued an initial determination finding that certain examiners that APP engaged were employees for purposes of unemployment insurance contributions and assessing APP with additional unemployment insurance contributions based upon remuneration paid to the subject examiners for the period January 1, 2011 through December 31, 2015. In a January 15, 2021 decision, the Unemployment Insurance Appeal Board sustained the Department's initial determination assessing APP $74,086.28 in additional contributions due for the period January 1, 2011 through December 31, 2015 based upon renumeration paid to the subject examiners during the audit period.
From 2017 to 2018, claimant Andris Y. Mota Reyes, a phlebotomist and certified EKG technician, and claimant Maureen O'Mara, a certified medical technician, provided services to APP as examiners. Following the provision of claimants' services to APP, claimants each applied for unemployment insurance benefits. The Department of Labor subsequently issued initial determinations finding that claimants were employees of APP and that APP was liable for unemployment insurance contributions based upon remuneration paid to claimants and others similarly situated effective January 1, 2016. In four decisions of the Board, filed January 15, 2021, the Board sustained the Department's initial determinations with respect to claimants and others similarly situated. APP separately appeals from the five decisions of the Board filed on January 15, 2021, and these appeals were consolidated by this Court.
We affirm. "Whether an employment relationship exists within the meaning of the unemployment insurance law is a question of fact, no one factor [*2]is determinative and the determination of the Board, if supported by substantial evidence on the record as a whole, is beyond further judicial review" (Matter of Eisenberg [CenseoHealth LLC-Commissioner of Labor], 205 AD3d 1185, 1185 [3d Dept 2022] [internal quotation marks and citations omitted]; see Matter of Brown [Plannernet, Inc.-Commissioner of Labor], 195 AD3d 1329, 1330 [3d Dept 2021]). "Substantial evidence is a minimal standard that demands only such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact" (Matter of Blomstrom [Katz-Commissioner of Labor], 200 AD3d 1232, 1233 [3d Dept 2021] [internal quotation marks and citations omitted]; see 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180 [1978]). When medical professionals are involved, the pertinent inquiry is whether the purported employer retained "control over important aspects of the services performed other than results or means" (Matter of Concourse Ophthalmology Assoc. [Roberts], 60 NY2d 734, 736 [1983]; see Matter of DeRoberts Plastic Surgery [Commissioner of Labor], 198 AD3d 1033, 1034 [3d Dept 2021]; Matter of Lawlor [ExamOne World Wide Inc.-Commissioner of Labor], 130 AD3d 1345, 1346 [3d Dept 2015]). "Further, an organization which screens the services of professionals, pays them at a set rate and then offers their services to clients exercises sufficient control to create an employment relationship" (Matter of DeRoberts Plastic Surgery [Commissioner of Labor], 198 AD3d at 1034 [internal quotation marks and citations omitted]; see Matter of Millennium Med. Care, P.C. [Commissioner of Labor], 175 AD3d 755, 757 [3d Dept 2019]; Matter of Kliman [Genesee Region Home Care Assn., Inc.-Commissioner of Labor], 141 AD3d 1049, 1050 [3d Dept 2016]).
The evidence in these three appeals reflected that APP recruited, screened and maintained a database of examiners that it retained from which it would select an examiner and offer assigned examinations to the examiners. Before retaining an examiner, APP verified their skill set and obtained proof of their professional licenses and/or certificates. Once retained, APP conducted an orientation session for new examiners during which it reviewed, among other things, the fees for the respective service types as well as the different insurance forms that the examiners were expected to fill out during an examination. Regarding payment, APP paid the examiners, based upon the type and scope of the examination conducted, a set rate according to APP's fee schedule and paid the examiners in their individual capacity. If an examiner, using APP's website, declined an assignment, APP offered the assignment to another examiner that it selected from its database. Similarly, if an examiner could not complete an assigned examination, APP managed the reassignment of that examination to another examiner. APP acquired and provided, without charge to the examiners, the requisite number of laboratory [*3]kits needed for the examinations as well as the necessary forms. APP also provided the examiner with the details needed to attend the examination at the applicant's home or business.
Upon completing an examination, the examiner was directed to submit the completed insurance forms to APP so that it could review those forms for completeness prior to submission of those forms to the insurance companies, and APP required the examiner to make corrections if necessary. APP managed the billing and collecting of fees by billing the insurance companies directly and rendering payment for examinations directly to the examiners on a weekly basis. APP maintained a general liability insurance policy that also covered the examiners. APP prohibited examiners from providing medical advice or opinions of any kind to insurance applicants. APP mandated that the examiners keep any and all information confidential. If an examiner wanted to provide a substitute, APP controlled such practice by requiring that the substitute be preapproved. If there were complaints regarding an examination or the laboratory kit sent by the examiner, APP discussed those complaints with the examiner, required the examiner to redo the examination if necessary and maintained ultimate responsibility for accurate completion of the examinations and forms. Notwithstanding other proof in the record that could support a contrary result, the foregoing constitutes substantial evidence supporting the conclusion that APP retained sufficient overall control over important aspects of the work of claimants and other similarly situated examiners to be considered their employer (see Matter of Armbruster [Summit Health, Inc.-Commissioner of Labor], 138 AD3d 1367, 1368-1369 [3d Dept 2016], lv dismissed 28 NY3d 946 [2016]; Matter of Walker [ExamOne World Wide, Inc.-Commissioner of Labor], 137 AD3d 1401, 1401 [3d Dept 2016] [collecting cases]; see also Matter of Eisenberg [CenseoHealth LLC-Commissioner of Labor], 205 AD3d at 1186-1187; Matter of Williams [Summit Health, Inc.-Commissioner of Labor], 146 AD3d 1210, 1210-1211 [3d Dept 2017]). To the extent that APP's remaining contentions are not rendered academic by our decision, they have been considered and found to be lacking in merit.
Garry, P.J., Reynolds Fitzgerald, Ceresia and McShan, JJ., concur.
ORDERED that the decisions are affirmed, without costs.

Footnotes

Footnote 1: The examiners consisted of various medical professionals including physicians, registered nurses and licensed practical nurses.